MICHAEL QUEALY, Respondent, v. ERASTUS C. WILLARDSON and Others, Appellants.

No. 1989.  Decided March 17, 1909 (100 Pac. 930).

1. JUDGMENT—DEFAULT JUDGMENT—PROCEEDINGS TO VACATE—SCOPE OF INQUIRY. On motion to set aside a default, a court can only consider facts bearing upon the merits to determine the one

question involved in the motion, whether defendants were inexcusably neglectful, the question not being whether the judgment was right or wrong, or whether defendants will ultimately establish a defense, but whether defendants present a meritorious defense in the answer tendered and sufficient excuse for not presenting it seasonably, since an adjudication of the merits on such motion precludes defendant's right to specific findings of fact and conclusions of law and an appeal on the merits.[1]   (Page 420.)

2. JUDGMENT—DEFAULT JUDGMENT—VACATION—JUDICIAL DISCRETION. Generally, the setting aside of a default is largely discretionary, but each case must depend upon its own facts and circumstances.   (Page 421.)

3. JUDGMENT—DEFAULT JUDGMENT—VACATION—FACTS SUBJECT TO CONSIDERATION.   Time may sometimes control the question of the propriety of opening a default, and in other cases may not be entitled to much, if any, consideration.   (Page 424.)

4. JUDGMENT—DEFAULT JUDGMENTS—VACATION—JUDICIAL POWER. While courts can require litigants to present their claims and defenses according to law and refuse them a hearing on inexcusable neglect to do so, the rules should be enforced so as to promote justice.   (Page 424.)

5. JUDGMENT—DEFAULT JUDGMENTS—VACATION—EXCUSE FOR DEFAULT.   Plaintiff brought a friendly mortgage foreclosure suit to aid defendant mortgagors in settling a third person's claim, which purpose was accomplished.   The suit lay dormant for nearly six years pending a dispute over plaintiff's attorney's fee and a question of interest.   At the end of that time, the dispute not having been adjusted, and no answer having been filed, plaintiff took a default judgment for the unpaid part of the debt and attorney's fees.   Defendants moved to set aside the default, tendering an answer denying the default pleaded in the complaint and alleging payment.   *Held*, that the motion was improperly overruled, especially since it appears that plaintiff suffered no injury through the delay and can suffer none by a trial on the merits.   (Page 425.)

APPEAL from the Third District Court, Salt Lake County. —*Hon. C. W. Morse*, Judge.

From a judgment refusing to set aside a default and vacate a judgment, the defendants appealed.

---

[1] Cutler v. Haycock, 32 Utah 354, 90 Pac. 897.

REVERSED.

*E. Hanson* and *E. A. Walton* for appellants.

*Edward McGurrin* for respondent.

FRICK, J.

This is an appeal from an order or judgment refusing to set aside a default and to vacate the judgment entered thereon. The material facts, in substance, are: That on February 24th, 1900, the appellants executed their promissory note for $2,300 due February 1st, 1905, and payable to the order of F. E. McGurrin & Co. The note bore interest at seven per cent., payable semiannually, evidenced by coupons attached to the principal note payable on the 1st days of February and August of each year. The note was secured by a mortgage on real estate situated in San Pete County, Utah. There was a provision in the note that if default were made in the payment of interest for the period of thirty days the holder might, at his option, declare the principal sum due and payable forthwith, and in such event the principal should thereafter bear interest at the rate of one per cent. per month, and the interest coupons due and unpaid should bear interest in double such sum. On February 1st, 1902, one of the interest coupons matured. At that time appellants had some trouble with one Jacobson, who preferred some claim against the mortgaged premises, which appellants disputed, but desired settled and adjusted. With this end in view, and for the purpose of inducing Jacobson to make an adjustment of his claim as favorable to appellants as possible, they decided not to pay the interest which became due (except as hereinafter stated) on February 1st, 1902, and to have respondent, who in the meantime had become owner of the note and mortgage aforesaid, and for whom F. E. McGurrin acted as agent and trustee begin an action to foreclose the mortgage, which said McGurrin agreed to do if he could thereby assist ap-

pellants in the object they had in view of forcing some settlement with Jacobson. Before the action was commenced, however, appellants made some arrangement with F. E. McGurrin, whereby the money to pay the interest coupons as they became due was deposited with McGurrin & Co., and appellants were credited with the amounts so deposited and the interest coupons surrendered to them. A special arrangement seems to have been made with regard to the interest conpon falling due August 1st, 1902; this being the one coming due just before the action was to be commenced. The payment of this coupon was made upon conditions, as appears from the following receipt: "Nov. 1st, 1902. Received from Mr. Ephraim Hanson eighty and 50-100 dollars to be held by us as follows: At our option this sum may be applied to the payment of interest or principal of loan No. 1665, Willardson, at any time. If not so applied, said sum to be returned to said Ephraim Hanson. F. E. McGurrin & Co."

The money mentioned in the receipt represented the interest due on one of the interest coupons and was never returned to either Hanson or appellants. A short time after this receipt was given, to wit, on November 24th, 1902, an action was in fact begun by respondent, through F. E. McGurrin & Co. as his agents, in Salt Lake County, to foreclose the mortgage aforesaid, and the complaint alleged that appellants had made default in the payment of interest, and that respondent had therefore elected to declare the principal sum due, and claimed judgment therefor, together with the increased rate of interest, and also for an attorney's fee of $400 which was alleged to be reasonable; the mortgage providing for a reasonable fee. Some question arose between appellants and F. E. McGurrin with regard to the propriety of bringing said action at the time. To this McGurrin, in substance, replied that he began the action in the interest of appellants as he understood it, but, if it were not satisfactory to them, to advise him of their wishes in the premises. The action was, however, per-

35 Utah—27

mitted to stand, and appellants appeared in the action by
their attorney, Ephraim Hanson, who filed a general de-
murrer to the complaint. This demurrer was overruled
March 4th, 1903, and the usual time to answer was given,
which was thereafter extended to March 24th, 1903, but no
answer was ever filed in the action until after default
had been entered, as hereinafter stated. The bringing of the
action, it seems, had the desired effect upon Mr. Jacobson,
who was made a party thereto, and a settlement was effected
by appellants with him. Things drifted along after this,
and considerable correspondence was had with regard to the
matter, both between Hanson, the attorney for appellants,
and F. E. McGurrin, and between appellants and Mr. Mc-
Gurrin. Appellants, it seems, did not always promptly pay
the interest coupons when they matured, but continued to
pay them to F. E. McGurrin & Co. from time to time, after
being prompted by them by letters to do so. It seems, also,
that after a settlement had been effected with Mr. Jacob-
son, both parties to the action regarded it as having served
its purpose, and they thereafter seemed to treat the mort-
gage as reinstated for the purpose of making future pay-
ments. This is apparent from numerous letters which ap-
pear in the record, in one of which, under date of March 24th,
1903, F. E. McGurrin wrote to Mr. Hanson as follows:
"Your favor of the 23d inst. received. While we have always
been, and still are, willing to do anything we consistently can
for Mr. Willardson, yet it does not seem reasonable that we
should be asked to pay the attorney fee out of our own pock-
et, and we leave it to you, as an attorney and fair-minded
man, whether we should be required to do this. We are will-
ing to reinstate the mortgage and let it continue at the same
rate of interest without charging anything for the trouble
we have been to in the matter, and we think that, under the
circumstances, Mr. Willardson ought to be willing to let it
go that way."

Appellants continued to pay interest as aforesaid on the
principal sum, and received eight coupons evidencing the

same, and on February 5th, 1904, or about a year before the principal sum became due by the terms of the note, paid the sum of $2,300, which was the amount specified therein, and at that time obtained a release of a part of the mortgaged premises. F. E. McGurrin & Co., however, after this time frequently demanded payment of the balance due. It seems from the correspondence that the main trouble was concerning the attorney's fee, which McGurrin & Co. insisted appellants should pay, while appellants claimed that the amount demanded was excessive. Matters continued in this situation until August 14th, 1908, when respondent, without any notice to appellants or their attorney, all of whom lived in San Pete county, this state, entered a default against appellants, and on August 25th thereafter a judgment was entered against them for $452.50 as a balance due on the principal debt and accrued interest, and for $250 as an attorney's fee. Hanson, the attorney for the appellants, was apprised of the default and judgment on September 10, 1908, and on the 22d of that month a motion to set aside the default and to vacate the judgment, supported by affidavits, and an answer sufficient in form and substance, were duly filed. In the evidence offered in support of the motion, the facts herein detailed, together with many others, are given at length. In the answer, after denying the allegation of default of the payment of interest as alleged in the original complaint, full payment of the indebtedness is averred. At the hearing on the motion to set aside the default and judgment, much evidence was adduced by both sides, most of which, however, as we view the matter, related to the defenses set forth in the answer, rather than to the question of negligence of appellants. Indeed, respondent's cross-examination of appellant's witnesses, as well as his affirmative evidence, related almost entirely to the merits.

While it is true that, in view of the peculiar circumstances of this case, both appellants and respondent were required to go into many of the facts which would be competent evidence upon a hearing on the merits, still these facts could

not be considered by the court except for the purpose of determining the one question involved in the motion, namely, whether the appellants, in view of all the circumstances, were guilty of inexcusable neglect. (*Cutler v. Haycock*, 32 Utah, 354, 90 Pac. 897; 1 Black on Judgments [2d Ed.], section 331.) The district judge seemed to entertain the view, however, that if it was made to appear from the evidence generally that the judgment was right, in view of the respondent's contentions, then the judgment would not be vacated, regardless of whether there was excusable neglect or not. The trend of his mind is clearly shown from what he said at the hearing in discussing with counsel the bearing of certain evidence, namely: "Now if the judgment [the one asked to be vacated] was a proper judgment—that is for what was merely due on the note— what complaint have you to make? . . . If this judgment was correct, it wouldn't make any difference whether it was inexcusable neglect or not." The court thus seemed to determine the correctness of the judgment rather than the question whether the appellants should be given an opportunity to make their defense in the proper way and at the proper time. The question was not whether the judgment was right or wrong, or whether appellants should ultimately establish a defense in whole or in part to respondent's claim. All that the court could pass on at the hearing on the motion was whether appellants had presented a meritorious defense in their answer, and whether they had shown sufficient excuse for not presenting such a defense at the proper time. With respect to the merits of the defense, appellants had the right to have the court make specific findings of fact and conclusions of law and enter judgment accordingly, and from such a judgment they had the right of appeal upon questions of both law and fact. When the court however, adjudged the defense of which appellants made profert as untrue upon the hearing of the motion, the right of appeal upon those questions was necessarily cut off. It is true that, where it is made apparent from the answer itself which

is offered that no other judgment is proper than the one entered upon the default, the court may decline to set aside the judgment, although the defendant might make it appear that his neglect was excusable. It is also true that the courts have frequently held that a court will not set aside a default judgment when the answer which is tendered upon its face shows that the defense therein set forth is "unconscionable, dishonest, or purely technical." (1 Black on Judgments [2d Ed.], section 349, and cases there cited.) A defense may, however, seem exceedingly technical, or even unconscionable, upon its face, and when all the evidence is heard with respect to it may, nevertheless, present a good defense to plaintiff's claim. A court therefore should be very slow in adjudicating in advance of a trial what defenses are or are not meritorious, or whether the judgment entered on a default is the only proper one in view of all the facts that may be made to appear in case a trial upon the merits is had.

But it is asserted by counsel for respondent that, in any event, the matter of setting aside defaults is a matter largely wthin the discretion of the trial court, and that in no event will its ruling be disturbed either in granting or refusing a motion to set aside a default by a reviewing court, unless it is clearly made to appear that the trial court abused this discretion. This is no doubt the general rule, and is the one adopted by this court as appears from the case of *Cutler v. Haycock, supra;* but the very reason which places the matter within the sound legal discretion of the trial court also suggests that each case must, to a large extent at least, be determined upon its own facts and circumstances. The discretion must necessarily be exercised in view of all the facts and circumstances surrounding the parties, their relation to the facts, and especially with reference to their conduct and dealings after the action is commenced. Time sometimes may be a controlling factor, and at other times may not be entitled to much, if any, consideration. In *Cutler v. Haycock, supra,* we said: "As has been well said, in all doubtful cases the general rule of courts

is to incline towards granting relief from the default and to bring about a judgment on the merits." The authorities in support of this doctrine are there cited, and need not be repeated here.

Then again, as in this case, the action may have been instituted as a friendly suit, and may have been begun for a special purpose, and not for the purpose of either directly enforcing or vindicating the plaintiff's rights. Ordinarily an action to foreclose a mortgage is begun for the purpose of obtaining a judgment with a view of enforcing it against the mortgage property by a sale thereof, and thus to pay the debt with the proceeds derived from the sale of the property. It is clear, however, that this action was not primarily begun for such a purpose, but it seems it was begun to aid the appellants in some way to force a settlement of some claim preferred by a third person against the mortgaged property. This purpose seems manifest when the subsequent conduct of both parties is considered. Appellant paid eight interest coupons, the last of which became due February 1st, 1904, about fifteen months after the action was commenced, and at about the same time paid the principal, amounting to $2,300. The intervening coupons between August, 1902, and February, 1904, were paid from time to time, not precisely as they fell due, but they were paid, and the amounts thereof were received when paid and the coupons surrendered to appellants. So far therefore as the obligation to pay was concerned, it seems the conditions imposed by the original note and mortgage were reinstated, and appellants undertook to discharge the debt in accordance with the terms of the note and mortgage, and not upon the theory that the whole debt was due and payable forthwith as stated in the complaint. The only question of difference that seems to have arisen between the parties was not with respect to when and how payments should be made, but whether the appellants should pay the attorney's fee claimed by respondent alleged to be due from appellants for services of the attorney in commencing the action, and, in connection with

this, what, if any, interest remained unpaid. It will be observed that all these matters arose out of transactions occurring after the action was commenced, except the attorney's services in planting the action. Appellants therefore could not have pleaded the defense of payment until long after the original action was commenced. This is the principal defense now. All other matters are merely incidental to this.

When respondent thus concedes, as appears from the letters written by his agent and trustee, that the action was begun for appellants' benefit, and that payment of all the interest coupons falling due after the commencement of the action and up to the time when the principal was paid was permitted, and under those circumstances the action was permitted to lie dormant for nearly six years, it seems appellants had at least a good reason to believe that the action, if not discontinued and abandoned in a legal sense, would, nevertheless, not be pressed to judgment without giving appellants at least a reasonable opportunity to make a defense thereto. Respondent, through his agent and trustee, knew that appellants disputed his right to the amount claimed by him as attorney's fee and as accumulated interest in excess of that stipulated in the note and mortgage. He further knew that whatever claims they had all arose out of transactions occurring after the action was commenced, and to all of which he was a party; and further knew that Hanson, during all the time, represented appellants as their attorney. He further knew that the action was commenced for a purpose other than to merely foreclose the mortgage and thus to obtain a judgment for a debt past due, and that appellants had the right to assume that the action would not be used for the purpose of settling the disputed matters which arose subsequent to the action. Yet, notwithstanding all this, respondent asked and obtained a judgment in the original action by default and without giving appellants any opportunity to be heard, except that they had six years in which to file an answer to the original action. So far as the real merits of the controversy are concerned, the effect of the

default judgment upon appellants, although not so intended by respondent, is precisely the same as though he had gone into court and obtained a judgment for a disputed claim without serving appellants with any summons or notice whatever. The only difference is that in this case the court had jurisdiction of appellants, while in the case instanced it would have been without such jurisdiction. The length of time intervening between the default and **3, 4** the commencement of the action is evidence of respondent's laches, rather than of appellants' negligence. While courts have a right to require all litigants to come into court and to present their claims and defenses in accordance with the law and rules of procedure, and in case of inexcusable neglect to refuse them a hearing, still these rules should be enforced so as to reflect justice between the parties to the action and for the purpose of vindicating the law and maintaining the dignity of the court.

We think the facts and circumstances fairly demonstrate that if Mr. McGurrin had at any time indicated to appellants, or to their attorney, that the judgment of the court would be invoked in the pending action with regard to the disputed interest and attorney's fee, the attorney would have asked leave of court to file an answer in which the facts would have been made to appear. If such an application had been made at any time after a default had been entered by the clerk, and before the court had rendered judgment thereon, and the court had refused to set aside the default, in view of the facts as they are made to appear, the refusal of the court would have amounted to a clear case of abuse of discretion. Why is the refusal to set aside the judgment, under the same facts and circumstances, not likewise an abuse of discretion?

Whether respondent is entitled to the increased interest and the amount of the attorney's fee allowed by the court are questions upon which appellants are entitled to special findings of fact and conclusions of law in accordance with the facts as they shall be made to appear when considered

in the light of the conduct of the parties and their transactions occurring after the original suit was begun; but the court, as we have seen, shut them off from this right, and the court's judgment, to a large extent at least, as we have heretofore shown, was based upon his conclusion that the judgment with regard to the matters referred to was right. In this view the court erred.

The court also erred in holding that, in view of the facts and circumstances in this case, appellants were guilty of inexcusable neglect. Such a ruling practically gave appellants no opportunity to even file an answer with respect to the only matters in dispute, unless we shall assume that, regardless of any facts or circumstances that may arise after a suit is begun, the plaintiff may at any time, and without notice of any kind, go into court and take a default judgment against his adversary. That this may be done in a strict legal sense may be true, but that it is an abuse of sound legal discretion not to set aside a default judgment obtained under the circumstances disclosed in this case, when the facts are made to appear to a court, is, to our minds, not open to any reasonable doubt. Especially is this so where, as in this case, there is no question concerning respondent's ability to present all the evidence pertaining to the case, and where it appears that he has suffered no injury whatever by the delay, and can suffer none by a trial upon the merits.

The judgment or final order of the district court refusing to set aside the default and to vacate the judgment is therefore reversed, and the cause remanded to the district court, with directions to set aside the default of appellants and to vacate the judgment entered against them, to permit appellants to file their answer, and to proceed to hear the case upon the merits. Appellants to recover costs.

STRAUP, C. J., and McCARTY, J., concur.