## McWHIRTER v. DONALDSON et al.

No. 1984.    Decided August 23, 1909 (104 Utah 731).

1. APPEAL AND ERROR—DISCRETION OF TRIAL COURT—VACATING—DEFAULT JUDGMENT. The general rule is that a motion to vacate a default judgment on the ground of excusable neglect and permit the party against whom it is entered to plead to the merits is addressed to the discretion of the court, and, unless it appears that the discretion has been abused, the court's ruling in vacating or refusing to vacate the judgment will not be disturbed on appeal.[1]    (Page 300.)

2. JUDGMENT — DEFAULT JUDGMENT — VACATION — EXCUSABLE NEGLECT—DISCRETION OF COURT. To bring a case within Comp. Laws 1907, section 3005, providing that the court may in its discretion upon just terms allow an answer to be filed after the statutory time, defendant must show due diligence to prepare and present his defense, that he was either prevented from doing so by some accident, misfortune, or circumstance over which he had no control, or that he was misled, or lulled into inaction, by the opposite party or his counsel, and, where on the day when plaintiff's attorney filed notice of his withdrawal from the case, defendant's attorney was informed by plaintiff that he proposed to push the case, and was informed by plaintiff's new attorney on the same day that the attorney would not obligate himself to continue in force a stipulation that defendants had entered into with plaintiff's former attorney extending the time for filing an answer, and that a default judgment was entered three weeks thereafter, defendant was not entitled to relief under the section.[2]    (Page 302.)

---

[1] Cutler v. Haycock, 32 Utah 354, 90 Pac. 897; Aaron v. Holmes, 99 Pac. 450; Quealy v. Willardson, 35 Utah 414, 100 Pac. 930.

[2] Peterson v. Crosier, 29 Utah 235, 81 Pac. 860.

3. STIPULATIONS—NECESSITY FOR FILING OR ENTERING ON MINUTES. Under Comp. Laws 1907, section 115, subd. 2, providing that an attorney shall have authority to bind his client by his agreement filed with the clerk or entered upon the minutes of the court and not otherwise, an oral stipulation to extend time for filing an answer which was neither filed with the clerk, nor otherwise made a matter of record, is of no legal effect. (Page 302.)

4. ATTORNEY AND CLIENT—POWER OF ATTORNEY TO BECOME SURETY. Under Comp. Laws 1907, section 133, providing that no practicing attorney shall become surety in a suit in which he is engaged as attorney, attorneys at law cannot act in the dual capacity of surety and attorney in the same action.  (Page 304.)

5. ATTORNEY AND CLIENT—OFFICE OF ATTORNEY—NATURE. Attorneys at law are officers of the court, and it is their sworn duty to aid the court in seeing that actions in which they are engaged as counsel are conducted in a dignified and orderly manner, free from passion and personal animosities, and that all causes brought to an issue are decided on their merits only, and they must devote their ability, skill, and diligence along ethical and professional lines to the interests of their clients, and refrain from entering into any alliance or incurring any obligation connected with the litigation in which they are engaged as counsel that would place them in a position where their personal interests would be adverse to those of their clients. (Page 304.)

6. JUDGMENT — DEFAULT JUDGMENT — VACATING — INTERPOSITION OF UNCONSCIONABLE DEFENSE. A default judgment will not be set aside to enable a party to interpose an unconscionable defense, and hence a default judgment for a sum lost by plaintiff at gambling will not be vacated to allow defendant to defend on the ground that he won the money according to the rules of the game played, which was in violation of the penal statutes; equity in such case leaving the complaining party where it finds him.  (Page 306.)

STRAUP, C. J., Dissenting

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by William McWhirter against James Donaldson and others.

Judgment for plaintiff.   Defendant appeals.

Affirmed.

*Thurman, Wedgwood & Irvine* for appellant.

*James Ingebretsen* for respondent.

McCARTY, J.

This action was begun in the district court of Salt Lake County to recover for money had and received. The complaint was filed October 18, 1906, and on November 19, 1906, summons was served on defendant James Donaldson. The other defendants were not served with process, nor did they appear in the action. On October 2, 1907, nearly a year after the service of summons, judgment by default was rendered in favor of plaintiff and against defendant Donaldson for the sum of $1353.33. On October 12, 1907, Donaldson moved the court to set aside the default and vacate the judgment, and permit him to file an answer which he presented in connection with his motion. He filed several affidavits, and introduced oral testimony in support of the motion. Counter affidavits were filed by plaintiff. The court overruled the motion, and Donaldson appealed.

The facts leading up to and surrounding the entry of default and the rendering of judgment thereon, and the grounds upon which Donaldson relied to have the judgment vacated and the case reopened, as shown by the files in the case and the affidavits presented and the testimony introduced at the hearing on the motion, are as follows: On or about September 19, 1906, plaintiff, in company with his brother, Alexander McWhirter, visited a certain rooming house in Salt Lake City, Utah, and engaged in a game of cards called "stud poker" with the defendant Donaldson. The money sued for in this action was bet and lost by plaintiff and won by Donaldson. The McWhirters employed M. P. Braffet, an attorney at law, to commence the action, and take whatever steps he might deem necessary to recover the money bet and lost on the game of cards referred to. Before the complaint was filed, it was discovered that

certain moneys belonging to Donaldson could be attached and held to satisfy any judgment that the McWhirters might obtain against him. To enable the McWhirters to furnish the undertaking required in attachment proceedings, Braffet consented to become one of the sureties. It therefore became necessary, under section 133, Comp. Laws 1907, for the McWhirters to procure the services of some other attorney to prosecute the action which they were about to commence. Braffet, with the knowledge and consent of the McWhirters, made arrangements with Samuel Russell, an attorney at law, to appear as attorney of record in the action which they were about to begin. Russell signed the summons and complaint as plaintiff's counsel, copies of which were served on Donaldson. Immediately after the action was begun, an undertaking on attachment was filed in the case with Braffet as one of the sureties, and certain money $1025 belonging to Donaldson was attached. After Donaldson was served with summons and a copy of the complaint, he employed S. R. Thurman and S. A. King, both of whom are attorneys of recognized ability, to take charge of and conduct his defense. It is alleged by Thurman and King in their affidavits filed in support of the motion to set aside the default and vacate the judgment that Braffet represented to them that, notwithstanding he had become surety on the attachment bond referred to, he nevertheless continued to remain in charge of the case for the McWhir-ters, and that "Russell was the attorney of record in said cause, was acting for him as a matter of courtesy, and was only the nominal attorney, and that said Braffet had the ac-tual charge of the conduct of said cause." Braffet made affidavit to the same effect. William McWhirter, plaintiff, in an affidavit which he filed in opposition to the motion, says: "The suit was brought in my name by the said Sam-uel Russell, and at that time, and ever since the commence-ment of this suit, I have understood that Samuel Russell was my attorney at law in the prosecution of this action." Before the statutory time for filing an answer had expired, Thurman and King met Braffet, and informed him that

they were preparing an answer to plaintiff's complaint on behalf of Donaldson, and that Braffet stated to them that he desired to amend the complaint, and requested them to defer the preparation of their answer until after they had been served with an amended complaint, which they consented to do. It must be borne in mind, however, that Donaldson's attorneys on this occasion consulted with Braffet well knowing that he was at the time one of the sureties on an attachment bond in the same action, and that Russell was the attorney of record for plaintiff. And the record shows that they so recognized Russell. On November 30, 1906, a little more than a month after the commencement of the action, a written notice was served on Russell, which recited that defendant Donaldson would on November 30, 1906, move the court to release the money theretofore attached in said cause. This notice, which was directed "to the plaintiff above named, and to his attorney, Samuel Russell," was signed by S. R. Thurman. Indorsed on the notice was the following acceptance: "Received copy of the foregoing notice this 30th day of November, A. D. 1906. [Signed] Samuel Russell, Attorney for Plaintiff." The money attached by plaintiff was upon Donaldson furnishing an undertaking as provided by section 3085, Comp. Laws 1907, released. S. A. King, one of Donaldson's attorneys became surety on the undertaking. The order of court releasing the money was made and entered of record November 30, 1906. No further proceedings were had of record in the case until September 12, 1907. In the meantime the McWhirters became dissatisfied because of the delay in bringing the action to an issue, and on August 6, 1907, Alexander McWhirter paid Braffet for his services, and released him from further responsibility in the case. Braffet thereupon gave McWhirter a receipt, of which the following is a copy: "Rec'd of Alexander McWhirter the sum of fifty dollars in full settlement of all claims which I may have had pending against him up to this time, and I have no further interest in any civil action or actions which he or his brother William may bring against any party or par-

ties.  This is not intended as a release of the claim of Sam-
uel Russell for his services in pending suit.  M. P. Braffet."
McWhirter decided "to have the case pushed more vigor-
ously," and with that object in view called upon Russell
and consulted him in regard to the matter.  Russell inform-
ed McWhirter that it was somewhat embarrassing for him
to continue as attorney in the case, as he and S. A. King,
one of Donaldson's attorneys, occupied and used the same
office, whereupon arrangements were made with Russell for
his fee, and on September 12, 1907, Russell filed in the
cause the following notice, a copy of which was served upon
S. R. Thurman:  (After title) "To Said Defendant
James Donaldson and to His Attorney:  You will take no-
tice that the undersigned has and does hereby withdraw his
appearance as attorney for plaintiff in the above entitled
cause.  Samuel Russell.  Salt Lake City, Utah, September
12, 1907."  The following acknowledgment of service is
indorsed on the notice: "Received copy of foregoing notice
this 12th day of September, 1907.  Thurman, Wedgwood
& Irvine, Attorneys for Defendant Donaldson."  As Mc-
Whirter was leaving Russell's office on the occasion referred
to, he met S. A. King, and King inquired of him what he
was "going to do about the case."  King, in his affidavit,
which was filed in the case in support of the motion to va-
cate and set aside the default, says:  That he was advised
by McWhirter "that Mr. Russell would no longer act as
counsel in this case, and that his connection with the same
had been terminated;" that McWhirter also stated that
James Ingebretsen had been employed as counsel for plain-
tiff in said cause; that he, King, immediately telephoned
Ingebretsen, and desired to know if he had been so employed
and at the same time stated to him that a stipulation ex-
isted extending the time for answering, and that he would
like to have the benefit of the stipulation; that Ingebretsen
answered that he had not been employed, but had been
spoken to concerning the matter, all of which is admitted
by Ingebretsen in his counter affidavit filed in the case,
but he also avers in his affidavit, which averment is not de-'

nied: "I replied that I had not been engaged and could not and would not obligate myself in any way, but that my hands must be free to take such action as might be directed by my clients." He further recited in his affidavit "that he (King) then asked me whether I would notify him when I was employed, and I then and there expressly told him that I would make no promises, and would not obligate myself in any way until I was employed." King, in his affidavit, says that Ingebretsen on this occasion promised that, in case he should be employed by the McWhirters, he would notify him, King, of such employment. No further conversation nor communication was had between Ingebretsen and either of the attorneys for Donaldson. King at the time he claims to have had this understanding with Ingebretsen was surety on the bond given by Donaldson to release certain funds hereinbefore mentioned which had been attached by plaintiff, and he was therefore, under section 133, Comp. Laws 1907, which we shall further on in the opinion again refer to and more fully discuss, disqualified from appearing or acting as attorney of record in the case. The court, so long as this disqualification continued to exist, was not required to consider any agreement that King might make with the McWhirters or their attorney out of court. About two weeks after the conversation last referred to, Alexander McWhirter employed Ingebretsen to appear as counsel for plaintiff. Ingebretsen inquired of McWhirter if he knew of any stipulation in the action, and McWhirter answered that he did not, but that he would go and ask Mr. Russell if there were any. McWhirter then left the office, and in a few moments thereafter returned and stated that he had asked Mr. Russell if there were any stipulation extending the time to plead and answer, and that Russell had answered that he did not know of any such stipulation or understanding. Before taking the default, Ingebretsen made personal inquiry of Russell as to whether or not he had stipulated, or in any way agreed with the attorneys for Donaldson that the time for appearing and pleading on the part of Donaldson was, or should be,

in any way extended, and Russell answered that he had made no such stipulation or agreement and knew of none to that effect. At the hearing on the motion to vacate the judgment Russell was called as a witness, and testified: "I have no knowledge of such a stipulation. I was not a party to it." Counsel for Donaldson served and filed notice of "intention to move the court to vacate and set aside the default and judgment . . . heretofore taken in said cause and rendered against the defendant James Donaldson. Said motion will be based and made upon affidavits hereinafter served," etc. No further nor additional motion, so far as the record discloses, was filed or made in the case.

The specific grounds upon which the motion is based are not set out in the notice. We assume, however, from the matters stated in the affidavits filed in support of the motion, and the manner in which counsel have discussed the subject-matter of the appeal in their printed briefs, that they base their right to have the default and judgment set aside upon one or more of the statutory grounds, namely, "mistake, inadvertence, surprise, or excusable neglect." We think, however, in view of the matters set forth in the affidavits, that the only ground which can be urged with any degree of consistency is that of "excusable neglect." No claim is made that the court was without jurisdiction, nor that the judgment is tainted with fraud, nor that it was illegally entered. The general rule is that a motion to vacate a judgment entered by default on the ground of excusable neglect and permit the party against whom it is entered to plead to the merits is addressed to the sound discretion of the court, and, unless it is made to appear that such discretion has been abused, the ruling of the court in vacating or refusing to vacate the judgment will not be disturbed on appeal. (*Cutler v. Haycock,* 32 Utah 354, 90 Pac. 897; *Aaron v. Holmes,* 35 Utah 49, 99 Pac. 450; *Quealy v. Willardson,* 35 Utah 414, 100 Pac. 930; 1 Black on Judgments, sec. 354; 6 Ency. Pl. and Pr. 202; 23 Cyc. 895.) Assuming, for the sake of argument, that respondent is not in a position to successfully

challenge King's right to appear and act for Donaldson in the case at the time he claims to have had the understanding with McWhirter and Ingebretsen that they would notify him of Ingebretsen's employment when made in time for him to file an answer before any further proceedings were had by plaintiff, still we do not think the showing made on the motion is sufficient to entitle Donaldson as a matter of right to have the judgment set aside and the case opened up on the ground of excusable neglect, or, for that matter, on any of the grounds mentioned in section 3005, Comp. Laws 1907. It was nearly three weeks after Russell filed and served his notice of withdrawal from the case before the default was entered, and on the very day on which this notice was filed, King, in answer to an inquiry made by him, was informed by Alexander McWhirter that he, referring to the case, "proposed to push it." When King on the same day spoke to Ingebretsen about continuing in force the stipulation which he, King, had entered into with Braffet extending the time for filing an answer, Ingebretsen very pointedly and emphatically replied that he would not obligate himself in any way, but that his hands must be free to take such action as might be directed by his clients. While King says in his affidavit that Ingebretsen agreed that he would, when employed by the McWhirters, notify him, King, of such employment (which was denied by Ingebretsen), he does not pretend to say that Ingebretsen agreed to continue in force the stipulation extending the time for answering the complaint, nor that he said anything from which it could be reasonably inferred that he would consent to any further extension of time. But, on the contrary, what was said and done by McWhirter and Ingebretsen clearly indicated that they intended to make every reasonable effort to bring the case to an issue at the earliest possible moment, and that they did not intend to further abide by the stipulation which was made with Braffet, who more than a month prior thereto had entirely severed his connection with the case. Therefore, the claim made by counsel for appellant that they were misled by what Mc-

Whirter and Ingebretsen said or did in the premises is not well founded. In order for a party to bring a case within the provisions of section 3005, Comp. Laws 1907, he must show that he has used due diligence to prepare and present his defense, and that he was either prevented from doing so because of some accident, misfortune, or circumstance over which he has no control; or that he has been misled or lulled into inaction by some agreement or act of the opposite party or his counsel upon which he had a right to rely. This appellant has wholly failed to do. (*Peterson v. Crosier,* 29 Utah 235, 81 Pac. 860.) And, furthermore, section 115, Comp. Laws 1907, provides, so far as material in this action, that "an attorney and counsellor has authority . . . (2) to bind his client in any of the steps of the action or proceeding by his agreement filed with the clerk or entered upon the minutes of the court, and not otherwise.". The stipulation in question was neither filed with the clerk nor otherwise made a matter of record. Therefore appellant cannot claim anything for the stipulation, because, under the foregoing provisions of the statute, neither he nor his counsel had any legal right to rely upon it.

In the case of *Borkheim v. N. B. & M. Ins. Co.,* 38 Cal. 623, the Supreme Court of California, in construing a statute identically the same as the one under consideration here, said:

"It declares such agreements null and void unless they are in writing and filed with the clerk or have been entered in the minutes of the court. Of such agreement, therefore, there can be no specific performance. To allow the court to enforce them, as was done in this case, against the will or without the consent of the parties, is to allow the court to work the precise mischief which the statute was designed to prevent. Instead of being nullified in that way, the statute ought to be strictly adhered to, for it is the dictation of wisdom. Without it the court would be frequently annoyed by disputes between counsel concerning their agreements, and thus forced to try innumerable side issues more perplexing than the case itself, attended, also, with delay to its business, and the detriment to the public service."

In the case of *Haley v. Eureka Co. Bank,* 20 Nev. 410, 22 Pac. 1098, the construction of a like provision in the statutes of Nevada was involved. The appeal in that case was from an order of the district court setting aside a default on the ground that it was entered in violation of an oral agreement between the parties which was to the effect "that no default judgment or other proceedings should be had or taken against them (defendants)." In the course of an elaborate opinion by Chief Justice Hawley, it is said:

"It was the duty of the district judge to enforce the rule, and he erred in overruling the objections to the testimony in relation to the verbal stipulation. It is not a case where the question was left to his discretion. There was a positive statute, a rule prescribed and adopted by this court for the government of the district court which could not be disregarded. . . . They (the defendants) knew that such an agreement did not, under the statute and rule of court, have any binding effect. . . . They knew that in the condition in which the litigation was the plaintiff had the legal right to at any time apply to the clerk for a default. If his attorney refused to act, he could, as was done in *Goben v. Goldsberry, supra* (72 Ind. 46), have discharged him and employed another attorney and instructed him to have the default taken. . . . The shield furnished by the law was ample for the protection of their rights, and, if they did not want a default to be taken, they should have availed themselves of its clear, wise, and beneficial provisions, instead of trusting to the uncertain memory of counsel or the instability of plaintiff's professed friendship towards one of the defendants. In the application and enforcement of the statutory provisions, it has been held that a party is not authorized to rely upon an oral agreement of the opposing attorney for a new trial upon the ground of surprise; that it is a want of diligence to rely on a verbal stipulation which is not binding. *Patterson v. Ely,* 19 Cal. 35. . . . The order of the district court is reversed."

In the case of *Martin v. De Loge,* 15 Mont. 343, 39 Pac. 312, a district court set aside a default on the ground that it was taken in violation of an oral stipulation made out of court. There was a rule of the district court which provided that no agreement between the parties or their attorneys relating to any cause would be regarded by the court unless reduced to writing or made in open court and

entered in the minutes thereof. On appeal the Supreme Court of Montana held that the rule, until rescinded or modified, is binding on the district court, and that the setting aside of the default was an abuse of discretion. The following cases also illustrate and declare the same doctrine: *Reese v. Mahoney,* 21 Cal. 306; *Merritt v. Wilcox,* 52 Cal. 238; *Jones v. Menefee,* 28 Kan. 436; *Marsh v. Lasher,* 13 N. J. Eq. 255; *Goben v. Goldsberry,* 72 Ind. 44.

Section 133, Comp. Laws 1907, provides that "no practicing attorney and counsellor shall become surety in any civil or criminal action, suit or proceeding which may be instituted in any of the courts of this state in which he is engaged as attorney." Now, this statute means, if it means anything, that an attorney cannot act in the dual capacity of both surety and attorney in the same action or proceeding. The purpose of the statute is manifest. Attorneys at law are officers of the court, and it is their sworn duty to aid the court in seeing that actions and proceedings in which they are engaged as counsel are conducted in a dignified and orderly manner, free from passion and personal animosities, and that all causes brought to an issue are tried and decided on their merits only. It is also the duty of an attorney to devote his ability, skill, and diligence along ethical and professional lines to the interests of his client, and to refrain from entering into any alliance or incurring any obligation connected with the litigation in which he is engaged as counsel that would place him in a position where his personal interests would be adverse to those of his client. While attorneys as a rule faithfully observe and fearlessly discharge these duties and obligations regardless of the effect that their actions in these respects may have on their own personal interests, yet experience has demonstrated that there are exceptions to the general rule, and that there are members of the legal profession who, when their own personal interests are involved in an action or proceeding in which they are acting as counsel, are apt to, and sometimes do, disregard these general duties which the law imposes

upon them.   Therefore, in order to prevent attorneys from having an undue interest in litigation in which they are employed as counsel, they are prohibited in this and many other jurisdictions either by statute or rule of court from becoming surety for their clients.

In *Love v. Sheffelin & Co.*, 7 Fla. 40, a case often cited with approval by both courts and text-writers, it is said:

"A suitor of the court is entitled, to a fair and impartial hearing, and to every facility consistent with legal provision for the assertion and maintenance of his rights, or their defense and protection; this especially from the officers of the court.  Suppose, however, that they connect themselves with one or other of the parties, by signing a bond to maintain his suit and discharge any liability that may devolve on them, to pay whatever judgment the court may award, what is their position, and that of the case?  Is not this officer pledged by his fortune to the suit to the side to which he has committed himself?  Is not his personal influence drawn and forced into the same channel, and has not his adversary to encounter all this, either in defense or as complainant, in the assertion and maintenance of his rights?  Is not the contest widened and extended by such action, and does it not henceforth cease to be between the original parties?  We do not stop to consider the possibility of this influence being willfully exerted.  There is no proof or suspicion of the kind in the case.  It is sufficient that such action has the tendency to defeat and obstruct the course of justice, and may be pernicious and injurious to an extent not easily estimated."

The case at bar is a good, illustration of the wisdom of the rule which precludes an attorney from becoming surety for his client.  Braffet, in his testimony on the hearing of the motion to vacate the judgment and set aside the default, stated that one reason why he delayed in filing an amended complaint was that he desired to minimize his obligation as surety on the attachment bond.  To quote him literally, he said:   "It (the amendment) involved the question of the attachment, and I was on the attachment bond and had guaranteed the other surety, and wanted to minimize the amount of the obligation."   And again he said:   "At the time of the filing of the complaint, I was not exactly satisfied to sue for this amount and was largely

influenced by a desire to influence my own liability as surety on the bond and that the liability that I would incur under my guaranty of the other surety whom I had induced to join me." It will thus be seen, according to Braffet's own version of the matter, that his failure to file the contemplated amended complaint and bring the cause to an issue was at least to some extent influenced by the personal obligation which he had incurred in the case by becoming surety on the attachment bond. The stipulation in question was not only in derogation of the statute, but Braffet, who entered into it on behalf of respondent, was at the time surety on the attachment bond hereinbefore mentioned which disqualified him from appearing as attorney of record in the case. We are therefore asked to give effect to an oral stipulation made with an attorney out of court, which, under the circumstances, the attorney could not have entered into in open court, without placing himself in a position where he could have been proceeded against for contempt of court. (Weeks on Attorneys, sec. 119; *Husband Bros. v. Georgia S. & Fla. Ry Co.*, 3 Ga. App. 157, 59 S. E. 326.) A mere statement of the proposition is all that is necessary to refute and overturn any argument that can be made in favor of it.

There is another reason why appellant is not entitled to have the case reopened. No principle of law is more firmly established, nor more strictly adhered to, than that which prevents the setting aside of a judgment to enable a party to interpose an unconscionable defense. (1 Black on Judgments, 348; 6 Ency. Pl. and Pr. 189; 23 Cyc. 964.) In the answer tendered by appellant in connection with his motion to vacate the judgment, it is alleged, among other things: That "Alexander McWhirter then and there in the immediate presence of said plaintiff, William McWhirter, took a hand and engaged in said game of cards, and then and there played with this defendant for money, and then and there wagered upon the result of said game. . . . That as a result of said game this defendant then and there won said money according to

the rules of said game, and in accordance with said rules then claimed and took possession of the same." It will thus be observed that appellant seeks to invoke the equitable powers of the court to enable him to retain the ill-gotten gains which he nefariously acquired by an open and flagrant violation of the penal statutes of this state. He does not come into court with clean hands. In such case equity gives no relief, but leaves the party where it finds him.

The judgment is affirmed, with costs.

FRICK, J., concurs. STRAUP, C. J., dissents.