641 P.2d 271

Herbert P. CAPLAN, a single person; Rosiland Kauffman, a single person dba U. S. Machinery Company, a partnership, Petitioners,

v.

Lawrence K. Bret HARTE, Pima County Superior Court Commissioner, Respondent,

and

ACTION SAND AND GRAVEL CORP., an Arizona corporation; Ralph and Mary P. Scarmella, husband and wife, Real Parties in Interest.

No. 2 CA–CIV 4260.

Court of Appeals of Arizona, Division 2.

Feb. 10, 1982.

Johnson, Welliever, Buckley & Otto by Robert J. Welliever, Phoenix, for petitioner U. S. Machinery Co.

Michael J. Vingelli, Tucson, for real parties in interest.

OPINION

BIRDSALL, Judge.

The subject of this special action is an order of the respondent court approving a surety bond on replevin (for redelivery). Although we deny relief, we have assumed jurisdiction to consider petitioners' challenge of the order since the matter is of importance to the bench and bar of this state.

Petitioners are the plaintiffs in a pending superior court action against Action Sand and Gravel Corporation (Action) and Mr. and Mrs. Scarmella. Petitioners' two-count complaint alleged in Count One that Action had purchased certain equipment, as described therein, and had executed a promissory note and chattel mortgage, that the note and mortgage had been assigned to petitioners, and that Action was in default and demand for payment had proved futile. They requested an order for repossession of the property and for judgment for the sum due and owing on the note. Count Two alleged only a claim against the Scarmellas

as guarantors of the indebtedness. Petitioners obtained a writ of replevin and posted a bond in the amount of $206,200. A redelivery bond executed by Action as principal, and by the Scarmellas and Roger Auerbach, a Tucson attorney, as sureties, was then filed. The affidavits mandated by A.R.S. § 7–101 were also filed.

Pursuant to A.R.S. § 7–107, petitioners objected to the sufficiency of the bond and the matter was set for hearing. The minute entry of the hearing reflects that Auerbach and Mr. Scarmella testified. In approving the bond, the respondent court must have been satisfied that each surety was worth the amount specified in the bond, over and above his debts and liabilities, exclusive of property exempt from execution.

Petitioners contend that Auerbach cannot serve as surety. We have been provided with a transcript of Auerbach's testimony. He stated that he had been paid $1,200 for acting as surety. He was questioned as to his association in the practice of law with counsel for the defendants, Mr. Vingelli. Auerbach responded that they shared office space in Suite 1600 of the Arizona Bank Building in downtown Tucson. He also admitted that he and Vingelli were partners in a legal clinic at another location in Tucson. Two other attorneys were employed at the legal clinic but Auerbach and Vingelli had "gone down there on occasion." This lawsuit emanated from Vingelli's downtown law practice.

▪ The right of an attorney to become a surety in judicial proceedings is generally governed by statute or rule of court. 7A C.J.S. Attorney & Client § 133; 74 Am. Jur.2d Suretyship § 10. In the absence of such statutes or rules of court, an attorney may be surety for a client on a judicial bond. *Guimont v. Naquin*, 152 So.2d 281 (La.App.1963). In Arizona, attorneys are absolutely disqualified from executing appearance bonds in criminal cases. Rule 7.1(e) Rules of Criminal Procedure, 17 A.R.S. On the other hand, only the attorney of record is disqualified in civil cases. A.R.S. § 7–109. The reason for such dis-

qualification is well stated in *McWhirter v. Donaldson*, 36 Utah 293, 104 P. 731, 735 (1909):

"... Now, this statute means, if it means anything, that an attorney cannot act in the dual capacity of both surety and attorney in the same action or proceeding. The purpose of the statute is manifest. Attorneys at law are officers of the court, and it is their sworn duty to aid the court in seeing that actions and proceedings in which they are engaged as counsel are conducted in a dignified and orderly manner, free from passion and personal animosities, and that all causes brought to an issue are tried and decided on their merits only. It is also the duty of an attorney to devote his ability, skill, and diligence along ethical and professional lines to the interests of his client, and to refrain from entering into any alliance or incurring any obligation connected with the litigation in which he is engaged as counsel that would place him in a position where his personal interests would be adverse to those of his client. While attorneys as a rule faithfully observe and fearlessly discharge these duties and obligations regardless of the effect that their actions in these respects may have on their own personal interests, yet experience has demonstrated that there are exceptions to the general rule, and that there are members of the legal profession who, when their own personal interests are involved in an action or proceeding in which they are acting as counsel, are apt to, and sometimes do, disregard these general duties which the law imposes upon them. Therefore, in order to prevent attorneys from having an undue interest in litigation in which they are employed as counsel, they are prohibited in this and many other jurisdictions either by statute or rule of court from becoming surety for their clients."

▪ The term "attorney of record" means the one appearing in the specific action. *Kracman v. Nebraska Public Power District*, 197 Neb. 301, 248 N.W.2d 751 (1976); *People v. Langford*, 191 Colo. 87,

550 P.2d 329 (1976). Auerbach is not the attorney of record and therefore would not be serving in a dual capacity where his personal interest as surety could be adverse to that of his client. The attorney-client relationship exists only between the defendants and Vingelli.

 Petitioners also complain as to the approval of Mr. and Mrs. Scarmella as sureties on the bond. Their argument is that since the Scarmellas are parties to the lawsuit, they are principals and therefore cannot wear two hats, i.e., they cannot simultaneously be a principal and a surety. They overlook the fact, however, that the principal is Action, the corporate obligor.[1] The Scarmellas' undertaking on which they were being sued was that of guaranty, i.e., they only agreed to answer for the debt, default or miscarriage of Action. A surety is bound as an *original* obligor—his under-

1. There has been no allegation of alter ego.

taking is primary whereas a guarantor's undertaking is only secondary on default of the principal. *Simpson on Suretyship*, § 14 (West Pub.Co.1950); *Stensvad v. Miners and Merchants Bank*, 598 P.2d 1083 (Mont. 1979).

The respondent court did not abuse its discretion in rejecting petitioners' attack on the sufficiency of the redelivery bond.

Relief denied.

HOWARD, C. J., and HATHAWAY, J., concur.