## WILKINSON v. STATE et al.

No. 2383.   Decided April 28, 1913 (134 Pac. 626).

1. WATERS AND WATERCOURSES—CANALS—LIABILITY FOR INJURIES. Where the state constructed an irrigation reservoir and a canal, and the work was done in such a manner that it was more than adequate to take care of any ordinary floods, an adjoining landowner cannot recover damages against the engineers or the board in charge of the work for damages to his land resulting from a break in the canal caused by unprecedented floods.[1] (Page 488.)

2. STATES—ACTIONS AGAINST—RIGHT TO MAINTAIN. In the absence of a constitutional provision or statute, a private individual cannot maintain an action against a sovereign state. (Page 492.)

3. STATES—ACTIONS AGAINST—WHAT CONSTITUTES. An action against the board of land commissioners for damages resulting from a break in an irrigation canal is, in effect, an action against the state, where the judgment was directed to be paid out of state funds. (Page 492.)

4. STATES—ACTIONS AGAINST—RIGHT TO MAINTAIN. Const. art. 7, sec. 13, constituting the Governor, Secretary of State, and Attorney General the board of examiners with power to examine all claims against the state, and providing that no claim shall be passed upon by the Legislature without having been considered and acted upon by the board of examiners, is an inhibition upon the maintenance of an action directly against the state, although it does not prohibit actions against state agencies, or even the board of examiners.[2]   (Page 493.)

5. STATES—ACTIONS AGAINST—JUDGMENT. In an action against the state for damages caused by the breaking of an irrigation canal, the district court cannot determine the funds out of which the judgment shall be paid and assess the judgment as a charge against the trust fund available for reservoir purposes given to the state by act of Congress. (Page 496.)

APPEAL from District court, Sixth District; *Hon. A. H. Christensen,* Presiding Judge.

---

[1] Lisonbee v. Irrigation Co., 18 Utah, 345, 54 Pac. 1009, 72 Am. St. Rep. 784.

[2] Thoreson v. State Board of Examiners, 19 Utah, 18, 57 Pac. 175; State v. Cutler, 34 Utah, 99, 95 Pac. 1071.

Action by Walter Wilkinson aganst the State of Utah, State Board of Land Commissioners and others, and Caleb Tanner and Freeman Tanner.

Judgment for paintiff. Defendants appeal.

REVERSED AND REMANDED, WITH DIRECTIONS.

*A. R. Barnes,* Attorney-General, *E. V. Higgins* and *George C. Buckle,* Assistant Attorneys-General, and *J. W. Cherry,* for appellants.

*Bates* & *Magleby* for respondent.

FRICK, J.

Respondent brought this action to recover damages to his land and growing crops which he alleged were caused by flood waters which were cast upon his land through the acts of appellants. The action was against the State of Utah, the state board of land commissioners as such, against the individuals constituting said board as such, and against the state engineer and his assistant. It is alleged in the complaint that the parties above named "owned and controlled a large canal . . . through which canal they conducted water for irrigating purposes." After describing respondent's land and giving the course and direction of said canal, and alleging that in connection therewith appellants also constructed a flume over the same and an "undershot" or culvert under it, the acts of appellants causing the alleged damages are averred to consist in having constructed certain embankments across certain canyons, thereby diverting the waters which gathered in and flowed from the same during rainstorms, and that, by reason of the acts aforesaid, it is alleged "the waters from said canyons were diverted from their natural course and channel and flowed down, across, and under said canal and upon plaintiff's (respondent's) said land, flooding and inundating the same, and the said waters during said time so diverted from their natural course

flowed in large quantities into said canal at and between the points where the said flume and the said sucker or undershot were placed and filled the same, *and by reason of the defects in the construction thereof* and by reason of the waters from said canyons being diverted from their natural course and confined and gathered as above stated, the banks of said canal gave way at a point west of plaintiff's land and the water therein, together with the waters coming from said canyons, flooded and inundated plaintiff's said land and covered the same with debris and totally destroyed the crops thereon and 2½ acres of plaintiff's said land." (Italics ours.)    The amount of damages to crops and land is specifically alleged. It is also averred that respondent filed his claim for damages with the state board of land commissioners, and that said board refused to allow  the same.    We remark that, apart from the conclusion we have italicised above, the complaint contains no allegation or intimation of negligence on the part of appellants.    Indeed, the complaint proceeds upon the theory that appellants are liable because they diverted surface waters from their ordinary and usual course or channel and cast them upon respondent's land to his injury and damage, without alleging negligence or incompetency on the part of appellants.

The individuals constituting the state land board entered a general demurrer to the complaint and the board of land commissioners as such demurred to the complaint upon the following grounds:

(1)  That the district court was without jurisdiction to entertain the action; (2) that there was a misjoiner of parties defendant; and  (3) that the complaint was deficient in substance.    The demurrers were overruled, and the State of Utah and all the appellants filed a joint answer in which, after denying practically all of the material allegations of the complaint, it is in substance averred that in the year 1908 said board of land commissioners, pursuant to law, and for and in behalf of the State of Utah, procured title to lands in Piute County, Utah, to be used as a reservoir; that said reservoir since 1908 has been and still is in process of con-

struction, and when completed is to be used for storing water for irrigating purposes, which water is to be used upon said and other lands; that for the purpose of conducting said water when stored as aforesaid to the land to be irrigated thereby the state board of land commissioners aforesaid, pursuant to law and under the supervision of the state engineer of the State of Utah, has constructed a canal leading from said reservoir along the foothills in a northerly direction and west of respondent's land; that the construction of said canal in the vicinity of respondent's land consisted merely of an enlargement of an existing canal owned by the Sevier Valley Canal Company, the enlarged canal being now owned jointly by said canal company and the State of Utah; "that in constructing said reservoir and canal said defendant (appellant) the state board of land commissioners, and Caleb Tanner, state engineer, have proceeded and acted in a careful, competent and skillful manner, have employed competent and skillful engineers and workmen, have used good materials suited for the purposes, and caused the construction work to be done in a careful, skillful, and substantial manner." It is further alleged that the flume and culvert, or "undershot" mentioned in the complaint, were constructed under the direction of the state engineer in a "skillful and lawful manner." The appellants then set forth that the injury and damages complained of were caused by a flood "of such unusual severity and magnitude that it could not have been anticipated or prepared against by human foresight, and that the loss and damages to the plaintiff, if any there be, were unavoidable and were caused by unavoidable accident and the act of God," and not through the acts of appellants. It is further averred that in constructing the reservoir and canal as aforesaid, and in doing all of the things complained of, the appellants were acting solely for and in behalf of the State of Utah, and pursuant to law, and that such reservoir and canal were constructed "for the common good of the citizens of the said state, viz., the reclamation and irrigation of a large area of arid lands aggregating about fifty thousand acres." Appellants further aver that for the reasons afore-

said neither they, nor the State of Utah, were suable in the courts of the state.

The case was tried to the court without a jury, and during the trial the court entered a nonsuit in favor of the State of Utah and in favor of the individuals constituting the state board of land commissioners, but refused a nonsuit in favor of the state engineer and his assistant. The court found the issues in favor of the respondent and found that he was damaged to the extent of $800. The findings of fact follow substantially the allegations contained in the complaint, except that the court specifically found that the averment that the flood was unprecedented was not sustained by the evidence. The court also made conclusions of law in accordance with the findings of fact, and entered judgment against the state board of land commissioners in form, but in fact against the State of Utah or its reservoir fund. The court directed that the judgment be paid out of said fund.

The record is presented upon appeal to this court, and we are asked to reverse the judgment upon substantially the following grounds:

(1) That the appellants in constructing the canal and in doing the acts complained of did not encroach upon respondent's land, and the injuries and damages complained of were not caused as a direct or necessary result of constructing the canal or doing the work complained of, but were merely consequential; that the canal was constructed by authority of and pursuant to law for a lawful and public purpose, and hence appellants, if liable at all for acts done, are so only in case they were negligent or unskillful in doing the acts, neither of which is either alleged or proved; (2) that the action is in fact against the State of Utah, which, without its consent, cannot be sued in its own courts; (3) that the judgment is contrary to law; and (4) that the injury and damages complained of were caused from unavoidable accident and the act of God.

The evidence offered on behalf of respondent supported the allegations of his complaint; but, in view that the complaint did not allege negligence, unskillfulness, or incompetency

in planning or doing the acts complained of, it is not neces-
sary to set forth respondent's evidence, nor to specifically re-
fer thereto.    At the trial respondent's counsel expressly
admitted that in 1908 the state board of land commissioners
as such procured a site for a reservoir in Piute
County, Utah, which was to be constructed for the
purpose of storing water to be used in reclaming
40,000 or 50,000 acres of arid land owned by the State of
Utah and others by irrigating them with the water stored
as aforesaid; that in furtherance of said project said board
caused the construction of said reservoir, and in connection
therewith also constructed said canal along the foothills run-
ning northerly into and through Sevier County for a distance
of about fifty miles; that in the vicinity of respondent's land
the canal was merely an enlargement of an existing canal
owned by the Sevier Valley Canal Company.    It was also
proved, without dispute, by appellants that the embankments,
flume, and culvert or undershot of which complaint was made
were constructed in connection with such canal for the sole
purpose of protecting the same against the flood waters,
which in case of rainstorms would gather in and flow out of
the canyons mentioned in respondent's complaint, and to
prevent the banks of the canal from breaking by reason of
such flood waters running into the same and mingling with
the 400 second feet of water which said canal was intended
to carry for irrigating purposes; that said canal, said flume,
culvert, and embankment were all constructed in accordance
with the plans and under the supervision and direction of
the state engineer who was a competent and skillful civil
engineer, thoroughly versed in the construction of works of
that character; that the embankments, flume, and culvert
were directed to be constructed by said engineer only after
he had carefully estimated the amount of flood waters that
would under ordinary and usual conditions gather in and
flow from said canyons in case of a rainstorm occurring in
said vicinity; that in constructing said embankment the flood
waters were to some extent confined and were made to flow
in the direction of respondent's land, but that such confine-

ment and flow, in the judgment of the state engineer, were necessary to prevent said waters from flowing over the banks of the canal and there mingling with the 400 second feet of water which was intended to flow therein and which was to be used for irrigating purposes and to prevent said flood waters from mingling with said canal waters, which, if not prevented, would cause the banks of said canal to overflow and break, and thereby, as the engineer expressed it, cause damages an hundredfold greater to adjacent lands lying under the canal than was sustained by respondent and which damage was intended to be, and in the judgment of the engineer, would have been entirely avoided if the rainstorm and flood causing the damages in question had been only ordinary and usual.

As the evidence now stands no other conclusion is permissible than that the interference with the flood waters from the canyons merely amounted to confining them within a narrow channel in order to prevent them from flowing into the canal, and there mingling with the large volume of water therein, which, if permitted, might, and in all probability would, break the banks of the canal, and thus cause both the water in the canal and the flood waters to flow over and damage and possibly ruin large portions of land lying adjacent to and under the canal. To prevent this the engineer, who was competent and skillful, exercised his best judgment. There is no evidence in the record tending to prove that the damages to respondent's land or crops were caused by the negligent or unskillful acts of the appellants or of any of them, or by reason of the incompetency of those who planned or did the work.    Moreover, the break in the canal which caused all of respondent's damages occurred at a point where he diverted his water from the canal to irrigate his land and which diverting appliance he, under the direction of the state engineer, placed there himself, and he makes no complaint that the engineer's plan or the work was insufficient for the purpose.    In view of the facts disclosed by this record, we are clearly of the opinion that no action could be sustained even against

a private person or corporation without alleging and proving either negligence upon the part of those doing the work or incompetency upon the part of those who planned the same, or that their plans were deficient• in that respect.

Upon this point the rule is well stated by the New York Court of Appeals in a case which in principle is precisely like the case at bar, namely *Atwater v. Trustees, etc.,* 124 N. Y. at page 608, 27 N. E. at page 387, where the court says:

"The doctrine, however, is well established in this state that public officers lawfully employed in making public improvements, and corporations engaged in the performance of work of a public nature authorized by law, are not liable for consequential damages occasioned by it to others, unless caused by misconduct, negligence, or unskillfulness."

The author of Weil, Water Rights in the Western States, in his third edition, section 461, after stating that in constructing and using irrigating ditches, flumes, etc., the owner or user is not an insurer against damages caused to others from overflow and leakage of the canal or ditch, says:

"The ditch owner is not liable merely because the break or escape occurred, but only if it occurred through his negligence. Negligence must be shown. It is not even a case of *res ipsa loquitur,* and negligence is not presumed from the mere fact that a break or escape occurred. . . . The ordinary ·rule of negligence, that there must be a failure to· use the care which an ordinarily prudent man would have taken under the circumstances, applies."

The Supreme Court of Oregon in a case involving the question of interference with the usual course or flow of water lays down the rule in the following words:

"The true test, considering all the circumstances, is:    Ought a competent and skillful engineer reasonably to have anticipated such a flood as caused the damage to the plaintiff and have made provisions therefor?"

(*Price v. Oregon Ry. Co.,* 47 Or. 355, 83 Pac. 845).
Wiel, in the section already quoted from expresses the

thought that the Oregon court states the rule with respect to the care that must be exercised too strongly against the ditch owner. The Supreme Court of this state, in the case of *Lisonbee v. Irrigation Co.*, 18 Utah, 345, 54 Pac. 1009, 72 Am. St. Rep. 784, in the headnote, which clearly reflects the opinion written by Mr. Chief Justice Zane, lays down the rule which, in our judgment, is applicable to the case at bar, in the following words:

"Canal companies and others attempting to control and use water are only required to anticipate and prepare to meet such emergencies as may reasonably be expected to arise in the course of nature. They are not required to meet unlooked for and overwhelming displays of power—such as storms of such unusual violence as to surprise cautious and reasonable men."

The evidence is uncontradicted in this case that the greatest known rainfall during one storm in the United States, falling upon an area such as one of the canyons in question contained, amounted to 163 second feet, while it is shown that the rainfall causing the damage in question amounted to 336 second feet flowing through the channel. It also appears from the evidence that in the other canyon whose area, was larger the fall amounted to over 600 second feet. It also was made to appear that the flume intended to carry off the water from the smaller canyon had a capacity of carrying off 300 second feet, or nearly twice the greatest known rainfall in the United States, and that the culvert or undershot which was intended to carry off the water from the other canyon performed the duty it was intended to perform. If the test laid down by the Oregon Supreme Court therefore should be applied in this case, still the evidence would fall far short of permitting a recovery. With respect to this point, the fallacy of respondent's contention consists in assuming that unless it is established that the flood causing the damage in question was unprecedented, and therefore constituted an act of God, appellants are liable. The law is that in making improvements like the one in question the one making them "is under no obligation to anticipate or provide against extraordinary floods. A flood within the

meaning of this rule need not necessarily be unprecedented."
3 Farnham, Water and Water Rights, section 990. Negli-
gence or incompetency under circumstances like those in the
case at bar is therefore not established, for the sole reason
that the flood causing the damages may not have been unpre-
cedented. It is not necessary to refer to additional authorities
to show that the contention of respondent is not tenable, that
this case does not fall within the rule stated above because
appellants diverted surface water from their ordinary and
usual channels. For the reasons stated, the conclusion of
law and judgment of the district court cannot be sustained.

In view that the question is one of jurisdiction, we are
also compelled to pass upon at least two of the other assign-
ments of appellants, although the judgment must be reversed
upon other grounds. We shall first take up the question of
whether appellants were suable in the courts of this state.
We have neither a statute nor a constitutional provision
authorizing a suit against the state. Respondent's
counsel do not in terms contend that an action against     **2, 3**
the state can be maintained, but what they contend
is that this action is not against the state. We cannot con-
ceive how counsel can seriously make such a claim, since
the very judgment they seek to uphold requires that it be
paid out of the funds belonging exclusively to the state. It
is idle to contend that an action is not against the state when
it and no one else is held responsible, and its funds are
directed to be appropriated in satisfaction of the judgment
without even a right to recoup its loss. To say that under
such circumstances the action is merely against state officials
or state agencies is to ignore the very essence of things. In
this case the acts complained of and attributed to appellants
were done for and in behalf of the state, and the canal, in
part at least, belongs to it, and all of the work was paid for
by state funds. The action therefore was in fact against
the state in whatever form it may have been commenced,
and in the absence of either express constitutional or statu-
tory authority an action against a sovereign state cannot be
maintained. The doctrine is elementary and of universal

application, and so far as we are aware there is not a single authority to the contrary. Certainly respondent's counsel have cited none. True, they cite authorities which are to the effect that certain actions against state officers or state boards are not necessarily against the state, but in every case cited by them it is expressly stated by the court deciding the case that, if the result of the action is to appropriate the state's funds to satisfy the judgment rendered in the action, the action is against the state, regardless of its form or against whom brought. The following authorities are directly in point: *Board, etc., v. Gannt,* 76 Va. 461; *Railroad Co. v. Tennessee,* 101 U. S. 337, 25 L. Ed. 960; *Printup v. Railroad Co.,* 45 Ga. 365; *Mills Pub. Co. v. Larrabee,* 78 Iowa, 97, 42 N. W. 593; *Wilson v. Louisiana, etc., Com.,* 133 Iowa, 586, 110 N. W. 1045, 119 Am. St. Rep. 646; *Tate v. Salmon,* 79 Ky. 540; *Lord &Polk, etc., Co. v. State Bd. of Agriculture,* 111 N. C. 135, 15 S. E. 1032; *Ottawa County v. Alpin,* 69 Mich. 1, 36 N. W. 702; *Sanders v. Saxton,* 182 N. Y. 477, 75 N. E. 529; 1 L. R. A. (N. S.) 727, 108 Am. St. Rep. 826; *Switzer v. Commissioners,* 134 App. Div. 487, 119 N. Y. Supp. 383; *State v. Mortensen,* 69 Neb. 376, 95 N. W. 831, 5 Ann. Cas. 291. Many more cases could be cited upon this branch, but it is not necessary to do so. The distinction of when an action is against the state or only against its officers or agencies is clearly pointed out by the Supreme Court of the United States *in Re Ayers,* 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216, and in *Pennoyer v. McConnaughy,* 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363.

Moreover it is made doubly clear that it was not intended to confer jurisdiction upon the courts of this state to entertain suits against the state by what is contained in both the Constitution and statutes of this state. Article 7, sec. 13, of the Constitution, constitutes the Governor, Secretary of State, and the Attorney-General a board of state prison commissioners, and, after defining the powers of that board, further provides as follows:

"They shall, also, constitute a board of examiners, with power to examine all claims against the state except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law; and no claim against the state, except for salaries and compensation of officers fixed by law, shall be passed upon by the legislature without having been considered and acted upon by the said board of examiners."

Appropriate statutes have been enacted to make the foregoing provisions effective. The States of Nevada and Idaho have precisely the same constitutional provision. In Nevada the provision is found in article 4, sec. 22, of the Constitution, and in Idaho it constitutes section 5 of article 10. In both those states there are, however, also constitutional provisions to the effect that the state may be sued in certain courts for certain purposes. Notwithstanding the latter provision, however, the Supreme Court of Nevada has held that no claim against the state can legally be paid until passed on by the board of examiners, and no action can be brought in the courts of the state until the claim has been passed on by said board, and the claimant is dissatisfied with the decision thereof. (*State v. Hallock,* 20 Nev. 326, 22 Pac. 123.) To the same effect is the holding of the Supreme Court of Idaho. (*Pyke v. Steunenberg et al.,* 5 Idaho, 614, 51 Pac. 614.) In a very recent case the Supreme Court of Idaho has again considered the question, and in our judgment has settled it under a constitutional provision like ours. The court there holds that, although expressly authorized to entertain actions against the state, yet the court cannot do so until the claim has been submitted to and passed upon by the board of examiners. (*Thomas et al. v. State,* 16 Idaho, 81, 100 Pac. 761.) The reasoning of both the Nevada and Idaho Supreme Courts seems reasonable and logical. It is pointed out by those courts that the board of examiners is a creature of the Constitution, and that the courts are no more than that. It is also suggested that neither can exercise powers that are withheld by that instrument. The people of this state, who are responsible for the Constitution and its terms, had the right

to confer or to withhold power as to them seemed proper. If, therefore, they created a tribunal and conferred powers upon it to hear and determine the justness of all claims not specifically otherwise provided for, the will of the people must be obeyed by the courts as well as by all others. As we have seen, even the legislature is prevented from passing upon any claim until the same has been passed on by the state board of examiners. The conditions upon which a claimant may have his claim considered and passed on by the legislature of this state are provided for in Comp. Laws 1907, sec. 945. In the same compilation, sections 929 to 949x1, inclusive, the duties of the board of examiners and the procedure to be followed in presenting and disposing of claims are fully set forth. A constitutional tribunal is therefore provided for in this state in which any claimant may be heard and from whose decision he may appeal to the only power which can provide funds for the payment of his claim if found just and if it be allowed. This is all any claimant can reasonably ask.

From the foregoing it is manifest that the people of this state have not arbitrarily, as they might have done, shielded the state from being sued in the courts, but they did so for good and sufficient reasons. It cannot well be disputed that, if in this state one court possessing original jurisdiction may entertain actions against the state, then all courts within their jurisdictional limits have such power. If one kind of a claim may be sued, all kinds may. The state, therefore, could be sued in every court of original jurisdiction in the state and its legal department might find itself wholly unable to attend to the litigation against the state. The constitutional provision is therefore a wise as well as a practical one. By what we have said we do not mean that state officers, or state boards, or state agencies may not, under certain circumstances, be sued in the courts. Such cases abound in the reports of this as well as other states. Nor do we mean that the state board of examiners is under the Constitution immune from suit. That such is not the case is pointed out in *Thoreson v. State Board of Examiners*, 19 Utah 18, 57 Pac.

175; *State v. Cutler,* 34 Utah, 99, 95 Pac. 1071. The district court was therefore without jurisdiction, and it erred in not sustaining appellants' demurrer upon that ground.

There is another reason why a judgment such as the one rendered and entered in this action is void because beyond the power of the court, even if the court had jurisdiction to entertain the action. As we have seen, the district court refused to enter judgment against the individual appellants, but entered a judgment against "the state board of land commissioners of the State of Utah" only. The court, however, did not stop there, but it ordered and adjudged that the said board "pay, and is hereby ordered to pay, to the plaintiff (respondent) out of funds available for reservoir purposes or other available sources the sum of," etc., with interest. This reservoir fund is a trust fund derived from the sale of certain lands which were granted by the United States government to the State of Utah in the enabling act in the following words: "For the establishment of permanent water reservoirs for irrigating purposes five hundred thousand acres." These lands were accepted by the people of this state in the Constitution (article 10, sec. 5), and it is there declared that the funds derived therefrom "shall constitute a permanent fund to be safely invested and held by the state." It certainly can require no argument to prove that the construction of irrigating ditches and canals comes directly within the purpose for which the fund was granted. Nor can it be doubted that said fund is a trust fund which, without the express consent of the state, cannot be devoted to purposes other than those expressed in the grant of the lands. Notwithstanding this, the district court seemed to be. of the opinion that it could sequestrate this trust fund for the payment of consequential injuries and damages sustained to growing crops and for injuries and damages to land which did not arise out of the construction of the canal but arose merely incidentally or consequentially. But here again, even though the court had jurisdiction of the action and the parties, yet it had not the power to render and enter the judgment rendered in this case. In doing so the court attempted,

not only to render judgment, but it also sought to enforce the same against a sovereign state in a particular manner. This it had not the power to do, even in a case where it had power to render judgment. The rule is well and tersely stated by the Supreme Court of the United States in *Railroad Co. v. Tennessee,* 101 U. S. at page 340, 25 L. Ed. 960, in the following words:

"When a judgment has been rendered, the liability of the state has been judicially ascertained, but there the power of the court ends. The state is at liberty to determine for itself whether to pay the judgment or not. . . . The courts are powerless. Everything after the judgment depends on the will of the state."

The same thought is expressed by the Supreme Court of Appeals of Virginia in *Higginbotham, etc., v. Commonwealth,* 66 Va. 641, where it said:

"All the court could do would be to ascertain and render judgment for the debt. Whether it shall be paid or not rests with the legislative department."

In this state, as we have seen, even the legislative department is powerless until the claimant has complied with the constitutional provision we have quoted. In no possible view, therefore, can the judgment in this case be sustained.

In view of the fact that the result would still be the same whether we held one way or the other upon the question of the defense of *vis major* or the act of God interposed by appellants, we refrain from passing upon that question in this case.

To obviate any misconception with respect to the scope of this opinion, we desire to state that we are not passing upon the powers of the state board of land commissioners in allowing claims for reservoir sites, for rights of way, for canals or ditches, or for direct injuries or damages to land which are necessarily caused by the construction of reservoirs, canals, or ditches and which are not merely consequential as in the case at bar.

42 Utah 32

The judgment is reversed and the cause is remanded to the district court, with directions to set aside the judgment, and to dismiss the action, appellants to recover costs.

McCARTY, C. J., and STRAUP, J., concur.

APPEAL from District Court, Sixth District; *Hon. A. H. Christensen,* Presiding Judge.

REVERSED AND REMANDED, WITH DIRECTIONS.