**Rolf TIEDE, individually and as guardian of Patricia Tiede and Shawn Rolf Tiede, Linae Tiede, Sue Ellen Reeder, Barbara Noriega, Claudia Goates, and Kenneth Tidwell, Plaintiffs and Appellants,**

v.

**STATE of Utah, Utah State Department of Corrections, Fremont Community Center, Orange Street Community Center, Von Taylor, Edward Deli, and John Does I–V, Defendants and Appellees.**

No. 940425.

Supreme Court of Utah.

April 17, 1996.

Allen K. Young, Salt Lake City, for plaintiffs.

Jan Graham, Att'y Gen., Barbara E. Ochoa, Debra J. Moore, Nancy L. Kemp, Asst. Att'ys Gen., Salt Lake City, for the State defendants.

HOWE, Justice:

Plaintiffs, who are relatives of decedents Beth Potts and Kaye Tiede, appeal from a dismissal of their action against the State defendants on the basis of governmental im-

munity. Defendants Von Taylor and Edward Deli are not parties to this appeal.

## FACTS

■ In reviewing the trial court's motion to dismiss, we accept the factual allegations in the complaint as true and recite them accordingly. *Russell v. Standard Corp.*, 898 P.2d 263, 264 (Utah 1995). On December 14, 1990, Von Lester Taylor and Edward Steven Deli walked away from the Orange Street Community Center, a state-owned halfway house. Both were convicted felons, and Taylor had been incarcerated for committing a violent crime. For about a week following their unauthorized departure, the two men stayed in or around Taylor's father's mountain cabin in Summit County. On December 21, 1990, Taylor telephoned Scott Manley, an inmate at the Fremont Community Center, another halfway house. Manley was unavailable, and Taylor left a message. The next day, just before 10:00 a.m., Taylor called again and reached Manley. He told Manley where he had been staying and explained that he had broken into other cabins in the same area and stolen guns. He informed Manley that he was waiting in a cabin for the owners to arrive and that he was going to kill them and steal their car.

Soon thereafter, Manley informed officials at the Fremont halfway house of Taylor's call and of his intended plans. The State [1] failed to respond to the information. At approximately 3:30 that afternoon, Taylor and Deli killed Kaye Tiede and Beth Potts and gravely wounded Rolf Tiede as the victims walked into their cabin. Taylor and Deli then assaulted and kidnapped Linae and Patricia Tiede, Mr. and Mrs. Tiedes' minor daughters who had also come to the cabin.

Plaintiffs (collectively "the Tiedes") brought this action, alleging that the State was negligent in failing to apprehend Taylor and Deli and in failing to protect their family members from the inmates. The action further alleges that the State proximately caused the injuries and the two deaths. The district court dismissed the complaint against

---

1. We will refer to defendants State of Utah, Utah Department of Corrections, Fremont Community Center, and Orange Street Community Center collectively as "the State."

the State on the basis of governmental immunity.

## ANALYSIS

■ We begin with the understanding that the propriety of a trial court's decision to grant or deny a motion to dismiss is a question of law that we review for correctness. *Russell,* 898 P.2d at 264. Ordinarily our analysis would initially focus on whether the State owed a duty to protect the victims from harm by Taylor and Deli. *See Higgins v. Salt Lake County,* 855 P.2d 231, 235 (Utah 1993). However, the trial court based its dismissal solely on governmental immunity and did not consider the State's duty. Thus for purposes of this opinion, we will assume, without deciding, that such a duty existed in order to examine the immunity question. *See Malcolm v. State,* 878 P.2d 1144, 1146 (Utah 1994) (examining immunity while assuming for purposes of opinion that State owed duty to protect rape victim from parolee); *Petersen v. Board of Educ. of Davis County Sch. Dist.,* 855 P.2d 241, 243 (Utah 1993) (per curiam) (holding school district immune from liability without addressing whether district owed duty to victim of assault); *Ledfors v. Emery County Sch. Dist.,* 849 P.2d 1162, 1164 (Utah 1993) (same).

### A. Immunity Under Section 63–30–10(2)

The district court held that the State was immune from liability under section 63–30–10(2) of the Utah Governmental Immunity Act (the Act), which provides in part:

> Immunity from suit of all governmental entities is waived for injuries proximately caused by a negligent act or omission of an employee committed within the scope of employment *except if the injury arises out of:*
>
> . . .;
>
> (2) *assault, battery, [or] false imprisonment. . . .*

Utah Code Ann. § 63–30–10 (emphasis added).

In determining whether an injury falls within this exception to section 63–30–10's general waiver of immunity for negligence claims, we have rejected attempts to evade the statutory categories by recharacterizing the supposed cause of the injury. Instead, we have "focus[ed] on the conduct or situation out of which the injury arose, not on the theory of liability crafted by the plaintiff or the type of negligence alleged." *Ledfors,* 849 P.2d at 1166 (school district immune where high school students beat fellow student); *see also Malcolm,* 878 P.2d at 1146–47 (State immune where parolee who had been on work program sexually assaulted and raped former employer's daughter); *S.H. v. State,* 865 P.2d 1363, 1365 (Utah 1993) (State immune where cab driver under state contract sexually molested deaf child); *Petersen,* 855 P.2d at 243 (school district immune where plaintiff was injured while trying to break up altercation involving school official); *Higgins v. Salt Lake County,* 855 P.2d at 240 (county immune where mentally ill woman under its care stabbed child); *Maddocks v. Salt Lake City Corp.,* 740 P.2d 1337, 1340 (Utah 1987) (city immune where police officers allegedly beat and wrongfully arrested plaintiff).

■ The Tiedes contend that because section 63–30–10(2) does not include the words "kidnap," "wrongful death," or "murder," the legislature waived governmental immunity for injuries arising out of those actions. We first examine the immunity of the State as it relates to the murders of Beth Potts and Kay Tiede. The plain language of section 63–30–10(2) immunizes the State against a negligence action if "the injury arises out of" assault or battery. The definition section of the Act states that " '[i]njury' means death," among other things. Utah Code Ann. § 63–30–2(5). Thus a governmental entity is immune from a negligence action for a death arising out of an assault or a battery.[2] This is the type of action we consider here. In

---

2. Although we have never applied section 63–30–10(2) to a wrongful death action, we have applied other subsections of 63–30–10 to such actions. *See Keegan v. State,* 896 P.2d 618, 626 (Utah 1995) (state immune from wrongful death action under discretionary function exception);

*Duncan v. Union Pac. R.R.,* 842 P.2d 832, 835 (Utah 1992) (same); *Madsen v. State,* 583 P.2d 92, 93 (Utah 1978) (state immune from wrongful death action under incarceration exception); *Emery v. State,* 26 Utah 2d 1, 2–4, 483 P.2d 1296, 1297–98 (1971) (same).

shooting the two victims, Taylor and Deli committed the torts of assault and battery.[3] Because the deaths arose out of these torts, the State is immune from suit for its alleged negligence that may have caused the deaths.

■ The State is similarly immunized for Taylor and Deli's abductions of Linae and Patricia Tiede. Section 63–30–10(2) immunizes the State against a negligence action if "the injury arises out of" false imprisonment. In kidnapping the Tiede daughters, Taylor and Deli committed the tort of false imprisonment.[4] Therefore, the State is immune from liability for the Tiedes' injuries that arose out of that tort.

These conclusions are consistent with the Act's context and purpose. The Act applies only to civil actions. *See* Utah Code Ann. § 63–30–2(1) ("As used in this chapter ... '[c]laim' means any claim or cause of action for money or damages...."). Therefore, the conduct for which the legislature sought to retain immunity in section 63–30–10(2) is described in terms of civil tort law. Murder and kidnapping, on the other hand, are both criminal offenses punishable by the State. Utah Code Ann. §§ 76–5–203, –301. Neither offense provides an independent basis for civil recovery of damages.

Wrongful death is a civil claim created by statute. *See* Utah Code Ann. § 78–11–7. Nevertheless, its express mention in section 63–30–10(2) is unnecessary because, as we have observed, this section already immunizes a governmental entity if a death "arises out of ... assault [or] battery." Thus if the underlying conduct constitutes an assault or a battery, immunity applies even though the victim dies from the attack. This makes sense since it is unlikely that the legislature intended to retain immunity where the victim

of an attack survives but waive immunity where the victim of an identical attack dies.

In sum, the district court correctly held that the State is immune from the Tiedes' claims under section 63–30–10(2).[5]

### B. Application of Article XVI, Section 5

■ The Tiedes contend that article XVI, section 5 of the Utah Constitution prohibits the State from invoking immunity from a wrongful death action. That section provides:

The right of action to recover damages for injuries resulting in death, shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation, except in cases where compensation for injuries resulting in death is provided for by law.

Utah Const. art. XVI, § 5. The Tiedes argue that this section requires the State, along with everyone else, to be subject to liability for wrongful death or any other tort resulting in death.

In examining this section nearly eighty years ago, this court explained that because

the Constitution clearly prohibits the Legislature from abrogating the "right of action," it becomes necessary to inquire what that right was and who enjoyed it at the time the Constitution was adopted by the people of this state. As we have seen, the Constitution says "the right of action" shall not be abrogated; *hence the right referred to must be deemed to be the right as it then existed* and not merely an abstract right.

*Garfield Smelting Co. v. Industrial Comm'n*, 53 Utah 133, 138–39, 178 P. 57, 59 (1918) (emphasis added) (striking down part of workers' compensation statute that attempt-

---

3. An assault is an act "(a) ... intending to cause a harmful or offensive contact with the person of the other ... or an imminent apprehension of such a contact" by which "(b) ... the other is ... put in such imminent apprehension." Restatement (Second) of Torts § 21 (1965). A battery is an act "(a) ... intending to cause a harmful or offensive contact with the person of the other ... or an imminent apprehension of such a contact" from which "(b) a harmful contact with the person of the other directly or indirectly results." *Id.* § 13.

4. False imprisonment is an act "intending to confine the other ... within boundaries fixed by the actor," which "results in such a confinement" while "the other is conscious of the confinement or is harmed by it." *Id.* § 35.

5. Because we have determined that the State is immune under section 63–30–10(2), we do not address the applicability of section 63–30–10(10) which retains immunity "if the injury arises out of ... the incarceration of any person."

ed to limit death benefits to minor heirs). Thus the scope of protection afforded by the wrongful death provision is limited to rights of action that existed at the time the provision was adopted.

Sovereign immunity was a settled feature of the common law when Utah became a state and adopted its constitution. In *Wilkinson v. State*, 42 Utah 483, 492–93, 134 P. 626, 630 (1913), this court stated:

> [I]n the absence of either express constitutional or statutory authority an action against a sovereign state cannot be maintained. The doctrine is elementary and of universal application, and so far as we are aware there is not a single authority to the contrary.

*See also State v. District Court*, 94 Utah 384, 389, 78 P.2d 502, 504 (1937) ("The State cannot be sued unless it has given its consent or has waived its immunity."); *Campbell Bldg. Co. v. State Road Comm'n*, 95 Utah 242, 249, 70 P.2d 857, 861 (1937) ("[A]ction may not be maintained unless the state has, through legislative or constitutional action, given consent to be sued.").

At the time the constitution was adopted in 1895, there was no express constitutional or statutory authority allowing suits for wrongful death against the State. Instead, all claims against the State had to be presented to the State Board of Examiners, composed of the governor, the secretary of state, and the attorney general. *See* 1898 Revised Statutes of Utah § 929. The Board heard evidence on the merits of each claim and either denied the claim or approved payment of a sum of money to settle the claim. *Id.* §§ 933–937. In the latter case, the settlement was then sent to the legislature for its approval and appropriation. *Id.* § 938. In sum, by retaining governmental immunity from wrongful death suits against the State, section 63–30–10(2) does not abrogate any previously existing right of action and therefore does not violate article XVI, section 5.

We sympathize with the Tiedes for the tragedy they have suffered. Nevertheless, we are bound by the legislature's policy decisions and are constrained by the immunity act to deny recovery against the State.

We affirm the district court's dismissal of this action.

ZIMMERMAN, C.J., and DURHAM and RUSSON, JJ., concur in the opinion of HOWE, J.

Associate Chief Justice STEWART dissents.