[No. 1307.]

THE STATE OF NEVADA, ex rel. COUNTY OF LYON, Relator, *v.* J. F. HALLOCK, STATE CONTROLLER, Respondent.

Special Election - Expenses of—Board of Examiners—Power to Audit Claims—Constitution and Statutes Construed.—In construing the provisions of section 8 of the act providing for a special election (Stat. 1889, 14,) and the act to provide for the payment of such election by the state (Stat. 1889, 21,) and the provisions of the constitution relating to the powers and duties of the board of examiners, (Art. V, Sec. 21,) and the statute in relation thereto, (Gen. Stat. 1895-6): *Held*, that it was the duty of the state board of examiners to audit the claims of the respective counties against the state on account of the special election, and that it was not within the power of the legislature to confer this authority elsewhere.

Idem—Mandamus—State Controller.—*Held*, that *mandamus* would not lie against the state controller to compel him to issue a warrant in any greater amount than audited and allowed by the board of examiners.

Application for *mandamus*.

The facts are stated in the opinion.

*W. E. F. Deal*, for Relator:

I. The board of examiners had no jurisdiction to examine into or pass upon the accounts certified by the board of county commissioners. (Provisions of constitution and the various statutes referred to in opinion discussed at length.)

II. Every reasonable doubt must be resolved in favor of the constitutionality of an act of the legislature. (*State ex rel. Lewis* v. *Doran*, 5 Nev. 408; *State ex rel. Ash* v. *Parkinson*, 5 Nev. 23; *Evans* v. *Job*, 8 Nev. 332; *Chicago etc. R. R. Co.* v. *Smith*, 62 Ill. 268; 14 Am. Rep. 99; *Gutman* v. *Virginia Iron Co.*, 5 W. Va. 22; *Lucas* v. *Board of Comm. Tippecanoe Co.* 44 Ind. 524.)

III. The legislature is unlimited in its power except in so far as it is not restricted by the constitution of the state and of the United States. They can, subject to such restrictions, appropriate money for any purpose they please. (Cool. Con.

Lim., 86; *Gibson* v. *Mason*, 5 Nev. 295; *Hobart* v. *Supervisors*, 17 Cal. 24; *Chandler* v. *Douglas*, 8 Blackf. 10; 44 Am. Dec. 732; *State ex rel. Ash* v. *Parkinson*, 5 Nev. 31.)

IV.  The legislature has full and complete control of the entire subject of counties, save when prohibited by the constitution.  Boards of county commissioners are bound to obey the direction of the legislature.  (Cool. Con. Lim. 191–2; *Hess* v. *Pegg*, 7 Nev. 23; *Newton* v. *Commissioners*, 100 U. S. 559; *Commissioners* v. *Albany Co.*, 2 Otto, 310; *City of St. Louis* v. *Allen*, 13 Mo. 414; *Coles* v. *County of Madison*, Breese, 154; 12 Am. Dec. 161; *State* v. *McFadden*, 23 Minn. 40; *Chickasaw Supervisors* v. *Sumner Supervisors*, 58 Miss. 619; *Reynolds* v. *Holland*, 35 Ark. 56; *Askey* v. *Hale Co.*, 54 Ala. 639; 25 Am. Rep. 730; *Chambers Co.* v. *Lee Co.*, 55 Ala. 534; *Sedgwick Co.* v. *Bunker*, 16 Kan. 498; *Humboldt Co.* v. *Churchill Co.*, 6 Nev. 30; *State ex rel. Mason* v. *Ormsby Co.*, 7 Nev. 392; *Sinton* v. *Ashbury*, 41 Cal. 530; *People* v. *San Francisco*, 36 Cal. 601; *People* v. *Alameda Co.*, 26 Cal. 648; *People* v. *Supervisors*, 11 Cal. 211.)

*John F. Alexander*, Attorney General, for Respondent.

By the Court, BELKNAP, J.:

At the session of the legislature of 1889, a law was enacted requiring a special election to be held on the eleventh day of February of that year for the purpose of submitting to the people certained proposed amendments to the constitution of the state. (Stat. 1889, 14.)  Under the general laws pertaining to elections the counties respectively were chargeable with the expense, and in order to reimburse them the sum of fifteen thousand dollars of the unappropriated moneys in the state treasury was set apart by a law approved by the governor January 23, 1889, (Stat. 1889, 21.)  The second section of the law reads as follows:  "Sec. 2.  The boards of county commissioners in the respective counties in this state shall, immediately after ascertaining the expenses of said election, certify the same to the state controller, who shall, upon the receipt of said certificate, draw his warrant upon the state treasurer in favor of the chairman of each board of county commissioners for the amount so certified, as being the expenses of said special election in each county."  Under the provisions of this section the board of county commissioners of Lyon county certified, that the expenses.

of the county amounted to the sum of one thousand and thirty-two dollars and fifteen cents, and demanded of the controller his warrant therefor. The demand was refused, and thereupon relator commenced this proceeding by *mandamus* to compel the issuance of the warrant.

The petition alleges, among other things, that the state board of examiners audited the claim of the county for the sum of seven hundred and seventy-five and twenty one-hundredths dollars, and that respondent was tendered his warrant upon the the state treasury for this amount. The question is whether the legislature can require the controller to draw his warrant for the amount ascertained to be due by the board of county commissioners, or whether the state board of examiners, under the provisions of the constitution, should have audited the claim. The constitution (article 5, section 21) provides: "The governor, secretary of state, and attorney general shall constitute a board of state prison commissioners, which board shall have such supervision of all matters connected with the state prison as may be provided by law. They shall also constitute a board of examiners, with power to examine all claims against the state, (except salaries or compensation of officers fixed by law,) and perform such other duties as may be prescribed by law. And no claim against the state (except salaries or compensation of officers fixed by law) shall be passed upon by the legislature without having been considered and acted upon by said board of examiners." The statutes relating to the enforcement of claims against the state provide that a claim for which an appropriation has been made, but of which the amount has not been liquidated, may be presented to the board of examiners, who shall act in the matter, either by rejecting it or allowing it, in whole or in part. (Gen. Stat. 1896.) The duty is also imposed upon the board to examine all claims presented by petition for which no appropriation has been made, "and which require to be acted upon by the legislature, and to take all evidence in regard to the same which may be offered by the claimant, or deemed proper by the board. The evidence shall be reduced to writing, and, together with the petition, shall be transmitted to the legislature at the first day of its next session, together with the opinions of the board in reference to the merits of the same." (Section 1895.) At each biennial session of the legislature appropriations are made for

the support of the government for the two years then current. From the nature of the case it is impossible for the legislature to anticipate the details of expenditures or to enumerate the specific disbursements to be made. Appropriations are made under separate heads, and expenditures chargeable thereto are considered and passed upon by the board of examiners in conformity with the requirements of the constitution that they "shall examine all claims against the state." Claims for which no appropriation has been made must be acted upon by the board before submission to the legislature, in order that its members may have the advantage of the information which the members of the board would naturally acquire from the nature of their duties. These provisions of the statutes present a practical and reasonable exposition of the provisions of the constitution, and place the authority to audit unliquidated claims with the board created for that purpose by the constitution.

Against the action of respondent it is said that the general legislation above referred to has been repealed by the statute of January 23, 1889, so far as it interferes with the auditing of the claim under consideration. Concede this, for the purposes of he case, yet the provisions of the paramount law remain, conferring authority upon the board of examiners to examine all claims against the state. Again, it is said that the constitutional requirement concerning the auditing of claims by the board of examiners relates only to such claims as must be submitted to the board before legislative action should be taken thereon. Claims requiring action by the board of examiners as a prerequisite to legislation are comparatively few in number, and action by the legislature upon such claims is generally final without further submission to the board. If a claim of this character is allowed by the legislature, the form of the law is generally such as to create a liquidated demand for which a warrant upon the treasury is issued. The most numerous and important claims against the state arise from the contingent expenses incurred in support of the government, and which must be met as they arise. In view of the manifest purpose of the constitution to protect the treasury by requiring the board of examiners to adjust all claims, it cannot be held that the many and important claims arising against the state, and which, as claims, have never been acted upon by the legislature, are

exempted from the investigation of the board. Without stating at length the various positions taken by relator, there is an insuperable objection common to all. Each contention involves an exemption of the claim of the county from the action of the board of examiners, and each is conclusively answered by the provisions of the constitution defining the duties of the board. It is not within the power of the legislature to confer this authority elsewhere. The board did its duty when it audited this claim, and if the county has been aggrieved, it has its remedy by an action at law against the state. (Gen. Stat., 3895.) In the view we have taken of this case, it is unnecessary to consider the power of the controller as an auditing officer. *Mandamus* denied.