## CALLAHAN v. SALT LAKE CITY.

### No. 2327. Decided June 21, 1912 (125 Pac. 863).

1. COURTS—DECISION—"DICTUM." A *"dictum"* is an opinion expressed by the court, which, not being necessarily involved in the action,. lacks the force of an adjudication. (Page 305.)

2. MUNICIPAL CORPORATIONS—TORTS—INDEPENDENT CONTRACTOR—LIABILITY. Where the work required by a street paving contract was such as to necessitate constant supervision with reference, not only to the preparation, but to the laying of the materials, that the contract provided that the city should have authority to inspect the work, order necessary changes, and require the contractor to discharge any incompetent or disobedient employee, etc., did not confer on the city any right to interfere with the methods the contractor employed to do the work, or to do more than see that it was properly executed; and the contractor was an independent contractor, and not the servant of the city, which was not therefore liable for injuries to the property of third persons by the contractor's alleged negligence. (Page 305.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by M. E. Callahan against Salt Lake City.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*S. P. Armstrong* for appellant.

*D. J. Dininny* and *P. J. Daly* for respondent.

FRICK, C. J.

Appellant brought this action against Salt Lake City, the respondent, to recover damages. The material allegations of the complaint are as follows:

"That the city contracted with P. J. Moran to grade and pave Fifth East Street; that on and before May 25, 1908, said Moran plowed up said Fifth East Street along the east side of the block in which plaintiff's house is situated; that the city negligently suffered him to throw and leave in the open gutter on the west side of the street earth and rubbish, thereby obstructing the gutter so that it was not capable of carrying off the water, and negligently permitted said condition to remain during the night of May 25th and morning of May 26th; that on said night there was a rainfall causing a large flow of water down said gutter that was diverted by said obstruction onto plaintiff's property, into his cellar, damaging his house."

Respondent denied all negligence and averred that the damages, if any, were caused by an act of God.

At the trial it was made to appear that on the 4th day of May, 1908, respondent entered into a contract with the P. J. Moran mentioned in the complaint whereby he agreed to pave with asphalt and concrete a roadway sixty-six feet wide on Fifth East Street between South Temple and Third South Streets in Salt Lake City; that by the terms of said contract he agreed to "execute all of the said named work in a good, substantial, and workmanlike manner, and to furnish all the materials and all the tools and labor necessary to properly perform and complete the work ready for use in strict accordance with the attached specifications." The contract also contained other provisions which appellant deems material and which in substance are as follows: That the contractor shall make and maintain sufficient guards and barricades and do all things to prevent "accident or loss of any kind;" that whenever the contractor is not present at the work and at such time instructions become necessary the board of public works or the city engineer may give the necessary orders to the superintendent or foreman in charge of the work; that any work which is defectively done shall be removed by the contractor whenever directed to do so by the board aforesaid; that the contractor shall employ suitable mechanics and if any person employed by him is incompetent, disorderly, or disobedient to the board of public works or to the city engineer, such person shall be discharged by the contractor upon request of said board or engineer; that the con-

tractor shall commence work at such place as he may be directed and shall conform to such directions as the board shall give with respect to the order and time in which different parts of the work shall be done; that the contractor shall comply with the ordinances of the city in so far as they may affect his employees or the disposition or transportation of the materials and shall assume all liability, and he agrees to indemnify the city against all loss or damage that may be occasioned by the doing of the work contemplated by the contract. Appellant's counsel also introduced in evidence several city ordinances and has incorporated them into the bill of exceptions. As we view the case, these ordinances were not intended to have, and do not have, any effect upon the case one way or the other. We shall therefore not refer to them further.

At the trial it was made to appear that the ditch or gutter referred to in appellant's complaint was some distance outside of that portion of the street which was being prepared for paving and which was to be paved under the contract referred to; that in turning the teams in scraping the dirt in that portion of the street which was being prepared for paving the witnesses assumed, rather than stated it to be so, that, on the day preceding the night on which the injury complained of occurred, some of the loose dirt was scraped some distance outside of the plowed portion of the street and was either scraped into the ditch or gutter, or left so near it, that such dirt was washed into the ditch by the flood which came down the street and gutter on the night aforesaid; that the flood was due to what, for this locality, the witnesses said was an extraordinary and unusual rainstorm; that the ditch or gutter in question had always theretofore been of sufficient capacity to carry off flood waters; that in paving the street the contractor was required to construct concrete or cement gutters on either side of the sixty-foot strip and to connect the same with a concrete or cement curbing which extended some distance above the bottom of the gutter; that the gutter or ditch referred to in the complaint was some distance away from the gutter and curbing aforesaid; that it was not neces-

sary that the contractor should interfere with or come in contact with the ditch or gutter in question, and it was not contemplated by the contract that he should or was required to disturb the same in any way. There was no evidence that any city official or employee knew or was apprised of the fact that the contractor was scraping dirt into or near the ditch or gutter in question, if, indeed, such was the case.

For the purposes of this decision we shall assume that the dirt was placed into or near the gutter aforesaid by the contractor.

Appellant also showed that there was a culvert over the ditch which was used by the residents on the west side of the street as a driveway, to reach their homes with teams and wagons; that the flood waters washed the dirt and debris down the ditch, and the same lodged against the culvert aforesaid and filled up the ditch at that point so that the water was turned to the west and flowed onto the premises and into the basement of appellant's house and caused the damages complained of.

After substantially proving the foregoing facts, appellant rested his case, and respondent's counsel interposed a motion for a nonsuit upon various grounds, one of which was that from the undisputed facts before the court it was clearly made to appear that Mr. Moran was an independent contractor, and that under the facts as aforesaid respondent was not responsible for his negligent acts which it is claimed caused the injury and damages to appellant's property. The court sustained the motion upon the ground stated and entered judgment dismissing the action.

The only questions for determination are: (1) Whether Moran, under the contract in question, was an independent contractor; and (2) if so, whether, under the undisputed facts, his acts were such for which respondent was, nevertheless, responsible.

Appellant contended in the trial court, and now asserts that Moran was not an independent contractor, and that respondent is liable for his acts of commission as well as omission in case such acts or omissions constituted negligence.

From the opinion of the trial court, which is in the record, it seems it encountered some difficulty in determining whether, under the terms of the contract in question and the undisputed facts, Moran was an independent contractor, and, if so, whether, notwithstanding that fact, the acts complained of were, nevertheless, such as would make respondent liable therefor. In referring to the authorities, and especially to a case decided by this court entitled *Morris v. Salt Lake City*, 35 Utah, 474, 101 Pac. 373, the trial court, in language perhaps more forceful than elegant, expressed himself thus:

"Now, the court has been over every one of these authorities that have been cited, and while that Morris Case don't decide, in my judgment, anything about what an independent contractor is, they just slide around that in that decision by conceding it and then go ahead and decide something else."

While the court, in his statement, departs somewhat from the ordinary rules of English grammar, yet we have found no difficulty in determining his meaning. Nor did the court intend to leave us in doubt with respect to the ground upon which his decision is based, as appears from the concluding portion of the aforesaid opinion, which reads as follows:

"If I have not covered the points counsel have in mind, I am willing to go on and cover them. I want to give sufficient reasons for my ruling so the Supreme Court won't think I am attempting to avoid giving a reason in any of these cases."

No doubt the court desired to make the point he passed on so clear that this court could not again "slide around" it without seeing it. This is, however, not the first time that we have discovered either expressed or implied criticisms contained in the rulings made by the trial courts during the course of a trial in which it was intended to infer that this court sometimes fails to decide the point upon which an opinion is desired by them, or, if decided, is, nevertheless, contrary to their views. Whether such criticisms are well founded or not is not for us to determine. We feel constrained to say, however, in this behalf, that we, and not the

trial courts, must assume the responsibility of determining whether a question that is raised in a given case is such as is necessarily involved in a decision thereof, and hence requires us to express an opinion upon it. In the Morris Case, referred to by the trial court, the question of independent contractor was not involved so as to require a decision. Indeed, if in that case we should have attempted to decide the question either way, the result would still have been the same.

It therefore was not necessarily involved in the case, and for that reason anything we might have said upon the subject would have been mere *dictum*. "A *'dictum'* is an opinion expressed by the court, but which, not being necessarily involved in the case, lacks the force of an adjudication." (3 Words & Phrases, 2051, and cases there cited.) Moreover, it sometimes happens that questions which are raised by the record are not argued by either side, and in such instances, where the questions are important and a decision of them in a pending case can be avoided, it is better to wait until a case arises wherein the questions have been thoroughly briefed and argued by both sides.

We have referred to the foregoing matters with some reluctance, and shall always refrain from referring to such things except when we deem it necessary. We now close the incident with the observation that, although we cannot unqualifiedly approve the court's English, we nevertheless have found no difficulty whatever in approving his ruling in sustaining the motion for nonsuit.

We cannot agree with counsel for appellant that under the terms of the contract in question the respondent retained such control over the work respecting the details of its execution as prevented Moran from being what, under the authorities, is held to constitute an independent contractor. The control that respondent retained was merely for the purpose of having the power to see that the work was properly executed in accordance with the specifications. The character of the work contracted for was such

41 Utah 20

as required constant supervision and inspection in order to fully protect the rights of respondent and its taxpayers. Below the asphalt surface was to be a concrete filling which was composed of certain ingredients which were to be of a specified quality, all of which had to be proportioned as to quantity and were required to be properly mixed. If the mixture did not contain the proper proportions of the specified materials, or if the materials were of inferior quality, or not properly mixed or placed in the street, or the gutters or curbing, it might very seriously affect the quality of the work with respect to its durability, and unless the respondent, through its authorized agents, could protect itself in the way provided for in the contract, it had practically no protection whatever. No rights with regard to supervision or inspection were reserved by respondent that were not necessary in order to learn whether the material or work or both were in compliance with the terms of the contract and specifications. Nor did respondent have the right to discharge any of Moran's laborers. All it could do in that regard was to call the contractor's attention to the fact that some of those employed by him were incompetent or were not complying with the terms of the contract or specifications in doing the work. Nor could it give any orders except when Moran was absent, and then only when the work required it because of his absence. We cannot see anything improper in what respondent was permitted to do under the contract. Nor can we conceive any reason why the foregoing provisions affected Moran's status as an independent contractor. If Moran complied with the specifications and terms of the contract, respondent had no more right to interfere with the methods he employed in doing the work than a mere stranger would have had. While, as may well be expected, the cases as to when and under what facts and circumstances a person who agrees to perform certain work or to erect certain structures is an independent contractor to whom the rule of *respondeat superior* does not apply are far from harmonious, yet, in our judgment, Mr. Moran comes squarely within the rules laid down in the following well-considered cases in which it is

held that, under facts and circumstances not distinguishable in principle from those in the case at bar, the contractors were independent contractors for whose negligence the contractees were not responsible: *Uppington v. City of New York,* 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550; *Charlock v. Freel,* 125 N. Y. 357, 26 N. E. 262; *Ege v. Phoenix Brick, etc., Co.,* 118 Mo. App. 630, 94 S. W. 999; *Alabama M. Ry. Co. v. Martin Bros.,* 100 Ala. 511, 14 South. 401; *Prowell v. Waterloo,* 144 Iowa, 689, 123 N. W..346; *Harding v. City of Boston,* 163 Mass. 14, 39 N. E. 411.

Nor was the work contracted for under the contract in question such as brings it within the rule of nondelegable powers. While the work contracted for was upon a public street, yet the street was, for the time being, withdrawn from public travel. Moreover, there is no complaint here that the injury was caused by reason of the unsafe condition of the street for use or travel. Neither was the work contemplated by the contract of such a character that its execution would necessarily cause the ditch or gutter to be filled or choked up or interfered with so as to affect the flow of water therein. Indeed, it is clear from the terms of the contract and the character of the work that it was not intended that the contractor should interfere with the street outside of that portion which he was to prepare for paving and which he agreed to pave. The contract therefore does not come within the rule that the contractee cannot escape liability where the doing of the work contracted for, necessarily brings about the conditions from which the injuries complained of, follow as a result. It is likewise clear that this case does not come within the principle upon which the case of *Morris v. Salt Lake City, supra,* is based, namely, that respondent is liable because the contractor created a condition in a public street which was a menace and a danger to the abutting property owner, and that the agents of respondent had actual knowledge of the danger, or that it existed for such a length of time as to impute notice thereof to respondent. The foregoing questions are also considered and passed upon in most, if not all, of the cases we have heretofore cited; and in all

of them it is held that, under the undisputed facts of this case, respondent is not liable for the acts complained of by appellant.

By anything that we may have said herein, we do not wish to be understood as expressing an opinion upon the liability of Mr. Moran. This is a question not involved in this case and cannot be determined until he is brought into court.

In our judgment the ruling and judgment of the trial court are clearly right and should be affirmed. Such is the order. Respondent to recover costs.

McCARTY, J., concurs.   STRAUP, J., concurs in result.