UINTAH STATE BANK v. AJAX, STATE AUDITOR.

No. 4990. Decided March 30, 1931. (297 P. 434.)

*Robinson & Robinson*, of Provo, for plaintiff.

*Geo. P. Parker*, Atty. Gen., for defendant.

FOLLAND, J.

This is an original proceeding in this court. Uintah State Bank, as plaintiff, seeks by mandamus to compel the defendant state auditor to issue warrants on the state treasurer in its favor on account of certain bounty certificates issued by the county clerk of Uintah county to various persons and assigned by them to plaintiff. The petition contains nineteen separate causes of action, all of a similar character. A statement of one cause of action will serve to illustrate all. The plaintiff, in its first cause of action, after alleging the corporate capacity of the Uintah State Bank and the qualifications and official position of Wilson Murray as county clerk of Uintah county and of Ivor Ajax as state auditor, alleges in substance that on the 23d day of September, 1929, the county clerk of Uintah county, pursuant to and in accordance with the provisions of chapter 36, Laws Utah 1925, made, executed, and delivered to Dell Massey of Vernal, Utah, a certificate in lawful form for $171 on account of bounty on 25 coyotes and 7 bobcats shown by affidavit of Dell Massey to have been killed by him within Uintah county and within sixty days prior to the date thereof, and certifying that the claimant had filed a corroborative affidavit of a reputable citizen and taxpayer within the county to the effect that claimant is a reputable person and to the best of affiant's knowledge and belief the facts set forth in claimant's affidavit are true; that the certificate was made by the county clerk by deputy and was countersigned by the county recorder of Uintah county; that the certificate was for a valuable consideration assigned to petitioner, and that thereafter, on September 29, 1929, petitioner duly presented the certificate to the state auditor for payment; that after receiving the certificate the state auditor examined it together with the affidavit and other papers made and exe-

cuted therewith, and found them to be in conformity with the provisions of chapter 36, Laws Utah 1925; that all such papers and certificates were correct as to form and that the certificate was duly and legally assigned to petitioner for a good and valuable consideration and the petitioner was the rightful owner thereof; and that an appropriation had been made by the Legislature of the State of Utah for the payment provided in the certificate. An alternative writ of mandamus was issued by this court directed to the defendant requiring him to issue a warrant upon the state treasurer for the amount stated in the certificate, or to show cause why he had not done so. The defendant filed a demurrer alleging want of facts in the petition to constitute a cause of action or ground of relief against the defendant, and particularly that it was nowhere stated or alleged in the petition that plaintiff's claim or demand referred to therein has ever been presented to, audited, or approved by the board of examiners of the state of Utah as required by section 13, article 7, of the Constitution of the State of Utah, or as required by title 29, Comp. Laws Utah 1917, and amendments thereto. Without waiving his demurrer, defendant filed an answer in which it is alleged that representations and statements made by Dell Massey in his affidavit were untrue, false, and fraudulent that the animals from which the hides or pelts therein referred to were taken were not killed in Uintah county within sixty days prior to September 23, 1929, nor were they killed in Uintah county at all, nor did the pelts have attached three full feet, nor were they in such marketable condition as to be salable, nor in such state of preservation as to enable the county clerk to identify them, nor were any of them subject to have bounty paid upon them under and pursuant to the act referred to, and alleged as a further defense that the claim or demand had never been presented to or audited or approved by the board of examiners as required by the Constitution and laws. To this answer petitioner filed a demurrer on the ground of want of facts to constitute a defense to the peti-

tion, and that the board of examiners have no authority in law to approve or disapprove the claim referred to. Similar demurrer and answer were filed with respect to each of the nineteen causes of action of the petition.

The first and most important question arising on this record is raised by defendant's demurrer to the petition, that is, whether or not it is necessary for plaintiff to allege that the bounty claim or certificate had been presented to, audited, and approved by the board of examiners.

It is the theory of plaintiff that the county clerk has the sole duty and prerogative of examining and auditing a claim for bounty for the destruction of predatory animals and that when he has issued his certificate for the amount of such claim, the claim is then audited and liquidated as provided by the act of 1925, and is binding upon the state; that as to such claim the duty of the state auditor is merely ministerial; that he has power to do nothing more than examine the affidavits and other papers and the certificate, and if he finds them correct in form it becomes his manifest duty to issue a warrant upon the state treasurer in favor of the claimant for the amount of the certificate, and that the board of examiners has no duty to perform with respect to a claim for bounty, nor any right to examine or audit, approve, or disapprove such claim; and that the bounty claimant or his assignee is not required at all to present such claim or certificate to the board of examiners. In support of this view petitioner relies largely upon the wording of the statute, chapter 36, Laws Utah 1925. This chapter is an amendment of Comp. Laws Utah 1917, sections 435 to 442, inclusive. These sections as amended provide in substance as follows: Section 435 creates the state bounty fund and requires the board of county commissioners of each county to levy a tax upon the assessed valuation of all sheep, goats, range horses and cattle to be collected as other taxes and paid into the state treasury, there to be kept by the state treasurer in a separate fund known as the state bounty fund. Five thousand dollars annually of this fund is to be paid to the

state board of agriculture and used by it in the destruction of rabbits and rodents, 50 per cent of the balance, including the unexpended balances, to go to the state board of agriculture to be spent in co-operation with the federal government for the eradication of rabies and the destruction of predatory wild animals, and the balance of the fund to be paid out upon warrant of the state auditor for bounties. Section 436 specifies the amount of bounty to be paid for the destruction of certain named animals. In section 437 it is provided:

"Any person who desires to obtain the bounties provided for in Sec. 436 shall, within sixty days of the date of killing of such animals, present to the county clerk of the county in which said animals were killed, the entire hide or pelt of such animal with at least three full feet attached in such a marketable condition as to be salable, and in such a state of preservation as to enable the county clerk to identify such animals. The applicant shall subscribe his name to the following affidavit and bill of sale in the presence of the county clerk." (Giving form of affidavit.)

Section 439 requires a corroborative affidavit of at least one reputable citizen and taxpayer of the county stating that the party claiming the bounty is a reputable person and to the best of affiant's knowledge and belief the facts set forth in claimant's affidavit are true. Section 440 provides:

"It shall thereupon be the duty of the county clerk to issue a certificate under the seal of his office, stating the number and kind of skins as herein provided for has been presented for identification, and stating the sum which said person is entitled to receive under the provisions of this chapter. Said certificate shall be in substantially the following form, as may be required for the different kinds of animals." (Setting out form of certificate.)

Section 441 requires the county clerk to forward to the state auditor certified copies of affidavits required to be filed and the certificate made by him, together with the endorsements of other county officers witnessing the identification and cancellation of the skins, and to keep a record of bounty certificates issued by him and to send such skins to the state board of agriculture to be thereafter sold by such

board and the proceeds of the sale to be paid into the state bounty fund. Section 442 provides:

"Upon receipt of the papers in this chapter hereinbefore provided, the State auditor shall examine the same, and if he shall find the certificates, affidavits, and other papers are in conformity with the provisions of this chapter, he shall draw a warrant in favor of the person entitled to the same upon the State treasurer for the amount shown by said certificate to be due, and shall deliver or transmit the same to the persons entitled thereto. Provided, that if the certificate issued by any county clerk in payment of bounty is not presented to the State auditor within two years from date, the same shall be cancelled and a State warrant shall not issue therefor."

It will be noted that the act nowhere requires that the claim or certificate be presented to the board of examiners, but does require the auditor to draw his warrant upon presentation of the certificate to him if he finds the affidavit and certificate are in conformity with the requirements of the act. The allegations of the complaint are therefore sufficient to withstand the demurrer unless it is necessary that the board of examiners pass upon and approve the claim for bounty before the auditor can be required to issue his warrant on the treasurer for the amount specified in the certificate, or unless the auditor has some discretion in the matter.

Section 13 of article 7 of the Constitution of Utah provides for a board of examiners composed of the Governor, secretary of state, and Attorney General "with power to examine all claims against the State except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law." Pursuant to this constitutional provision the Legislature has more particularly specified the duties of the board of examiners in title 29, Comp. Laws Utah 1917. In section 2471 of title 29, it is provided that: "Any person having a claim against the state, for which an appropriation has been made, may present the same to the board, in the form of an account or petition. * * *" Section 2482, as amended by chapter 51, Laws Utah 1921, provides: "The state auditor shall not draw his

warrant for any claim, unless it has been approved by the board, * * * except for salaries or compensation of officers fixed by law, or for moneys expressly appropriated by law." This court has had occasion to construe these provisions of the statute and of the Constitution in the case of *State ex rel. Davis* v. *Edwards*, 33 Utah 243, 93 P. 720, 721. After quoting section 13, article 7, of the Constitution and section 946 of the Revised Statutes of 1898, which is the same, so far as quoted, as section 2482, Comp. Laws Utah 1917, as amended, the court says:

"The powers conferred upon the board of examiners, with regard to claims against the state by the constitutional provision quoted above, are general and sweeping. The power would include all claims against the state, were it not for the exception which excludes salaries or compensation of officers fixed by law. An exception of this character may not be enlarged nor extended by implication. An exception which specifies the things that are excepted from a general provision strengthens the force of the general provisions of the law. 2 Lewis' Sutherland, Stat. Const. § 494. It is an elementary doctrine that, if there are any provisions in a statute which in any way conflict with a constitutional provision, the Constitution controls. Does the claim of the petitioner come within the constitutional exception? If it does not, then by virtue of section 946, Rev. St. 1898, above quoted, the respondent cannot legally be required to draw his warrant upon the State Treasurer therefor until it has been approved by the board of examiners. The petitioner does not state in his petition that the claim has been so approved. In order to state a complete cause of action against the State Auditor for relief in case the auditior refuses to draw a warrant, it must appear from the application either that the claim has been approved by the board of examiners, or that it is one that comes within the constitutional exception."

In the Edwards Case, supra, it is made to appear that a judge of the district court, pursuant to power conferred by law, employed J. R. Davis as his court stenographer and certified his mileage to the state auditor. This was done under the provisions of an act providing for the employment of court stenographers wherein it was stated: "And the amount of such mileage shall be certified by the court to the state auditor, who shall draw

his warrant upon the state treasurer for the amount so certified, and the same shall be paid out of the state treasury." In that case the act in question made no provision for examination or audit by the state board of examiners, but directed the auditor to issue the warrant upon presentation of the certificate of the district judge. It was there contended that the claim came within the exception of "compensation of officers fixed by law." The court assumed, for the purpose of the decision, that Davis was an officer, and that mileage may, under certain circumstances, constitute or form a part of official compensation, but since discretion was vested in the district judge to contract with the stenographer for not to exceed a certain stated per diem and mileage, it was held that the claim was fixed by contract and not by law, and that the plaintiff's claim, not coming within the exception referred to, was such a claim as must be presented to the board of examiners for its action before the state auditor could be required by mandamus to issue a warrant in payment thereof. This decision we think controlling in the present case. It follows, therefore, from the Constitution and statutes as thus construed, that the bounty claims or certificates in question must be presented to and approved by the board of examiners unless it appears that they are either not "claims against the state" or that they represent "salaries or compensation of officers fixed by law." It is not seriously contended that these are not claims against the state, but, on the contrary, it is rather assumed in the arguments and briefs of counsel that they are. This could not well be otherwise. That these are demands against the state seems clear because the fund from which bounty claims are paid is raised by taxation; the money is paid into the state treasury, is subject to appropriation by the Legislature, and is paid out by the state treasurer on warrant of the state auditor. We see no good reason why a fund raised by taxation for a special purpose is not entitled to the same protection as is the general fund. That they are "claims" is equally clear.

"The word is derived from the latin clamor, meaning a call, a demand. In its ordinary sense the term imports the assertion, demand or challenge of something as a right; the assertion of a liability to the party making it to do some service or pay a sum of money. * * *" 11 C. J. 816 (claim).

The terms "claim against the treasury" has been defined to mean a claim which the state is or may be under legal obligation to pay. *State* v. *Moore*, 40 Neb. 854, 59 N. W. 755, 25 L. R. A. 774. The payment of bounties is not a mere gift by the state, but is in the nature of an offer to pay a certain amount for the killing of named predatory animals. The offer is accepted when acted upon by the claimant in killing the animals, presenting the pelts to the county clerk and claiming the bounty offered, there being then a consideration for the claim under the offer of the state. The money claimed is earned under such a contract, and the state has a legal obligation to pay. The offer may, of course, be withdrawn at any time before acceptance. In the absence of a valid offer, duly accepted by performance, no obligation would rest upon the state to make payment. That a bounty claim is such a "claim against the state" as comes within the power of the board of examiners to examine and pass upon has been held in *Ingram* v. *Colgan*, 106 Cal. 113, 38 P. 315, 318, 39 P. 437, 28 L. R. A. 187, 46 Am. St. Rep. 221.

It is obvious that these certificates do not represent salaries or compensation of officers. It is, however, urged by petitioner that the amount to be paid is "fixed by law" and that the claims have been liquidated by action of the county clerk. In the brief for petitioner, counsel say: "The provision (of the constitution) has no application to claims which the auditor is to pay which are provided for in a separate statute such as chapter 36, Laws Utah 1925, under which the claims in question arose. The claims provided for in this chapter are claims which arise wholly out of the petitioners right under this particular act, and they are of a definite liquidated character." And again: "Here we are dealing with a claim which is fixed by law.

The amount is mathematically certain and has been fixed this way by the Legislature." A complete answer to this argument is that the Constitution makes no such exception. All claims are subject to action by the board of examiners, except only claims for "salaries and compensation of officers fixed by law." The claims here are not fixed by law in the sense that the Legislature has made an appropriation of an amount certain to a definite named person. It is true a unit price to be paid on certain animals as a bounty is fixed by law, but before the claim is liquidated it must be determined how many animals were killed, where and within what county, and the pelts submitted must be examined and found to comply with the requirements of the statute. While the duty is imposed upon the county clerk to make this examination before making and delivering his certificate, it is no answer to the constitutional requirement to say that the county clerk has audited and examined the claim, and that that is sufficient. There could be no claim against the state for bounty until the animals are killed and the pelts presented to the county clerk. It is by the county clerk that the claim is liquidated, not by the Legislature. May the Legislature then, in the face of our constitutional provision, pass over the board of examiners and set up some local agency by which claims may be fixed and settled without any state officer having power to examine and approve or disapprove such claim?

If we should adopt petitioner's view it would follow that the Legislature might designate any officer other than the board of examiners as authorized in behalf of the state to settle, fix, or liquidate claims and agree upon the amount to be paid thereon, and thereby exclude the board of examiners from its duty and responsibility with respect to claims thus liquidated pursuant to legislative authority. We cannot agree to any such construction of the constitutional language, nor may we by construction interpolate the word "unliquidated" into the Constitution so that it would provide that the board of examiners have power to

"examine all unliquidated claims against the State," etc. The Constitution has vested in the Board of Examiners the power to examine and pass on all claims except those exempted, and the Legislature is without authority to delegate such power to any other board or officer.

Petitioner cites the following cases to the effect that the constitutional provision "all claims against the state" embraces or includes only claims of an unliquidated character: *Winters* v. *Ramsey*, 4 Idaho, 303, 39 P. 193; *State* v. *Nat. Surety Co.*, 29 Idaho, 670, 161 P. 1026, 2 A. L. R. 251; *State ex rel. Ash* v. *Parkinson*, 5 Nev. 15; *State* v. *Hallock*, 20 Nev. 326, 22 P. 123. These cases nowhere define the term "unliquidated," nor are they cases where the decision determines what is or is not included within such term. The earlier Idaho case refers to *State* v. *Hallock*, supra, as authority for the statement, and that decision uses that term because of the statute of that state, section 2022, Comp. Laws of Nev. Ann. 1861-1900, wherein it is provided: "All claims against the state for services or advances, for payment of which an appropriation has been made by law, and which have been by law authorized, but of which the amount has not been liquidated and fixed, may be presented to the Board of Examiners," etc. A similar statute in this state, Comp. Laws Utah 1917, § 2471, reads: "Any person having a claim against the state, for which an appropriation has been made, may present the same to the board," etc., and does not limit the operation of the statute to unliquidated claims as does the Nevada statute.

Two views might be taken of the language in section 442, supra. The view more consistent with rules of statutory and constitutional construction would be that the Legislature had in contemplation the constitutional provision, and saw no need to provide by express words that the certificate should first be presented to the board of examiners before being paid. If the view is taken that the Legislature intended to make this claim payable by the auditor without presentation to the board of examiners, then

the Legislature attempted to do that which it had no power or authority to effectuate, and on this question the language in the case of *State ex rel.* v. *Edwards,* supra, is not only appropriate, but decisive. The court said:

"The attempt by the Legislature to require the Auditor to allow a claim which by the Constitution must first be approved by the board of examiners can avail nothing. The Auditor is bound by the constitutional provision. The Legislature is so bound, and so are we. The Legislature may make certain evidence conclusive with regard to a specific matter, but it may not interfere with powers conferred or duties imposed by the Constitution."

This construction of the constitutional provision in question finds support in cases from other states. The state of Nevada has a constitutional provision identical with section 13 of article 7 of the Constitution of Utah. It was construed in *State* v. *Hallock,* 20 Nev. 326, 22 P. 123, 124, wherein it was held that the Legislature had no power to deprive the board of examiners of its duty and authority over claims against the state. A special election had been called by legislative enactment for the purpose of submitting to the people certain amendments to the constitution. An appropriation was made to defray the expenses of the election. It was provided in the act that the board of county commissioners of the respective counties should immediately after ascertaining the expenses of said election certify the same to the state comptroller, who should, upon receipt of the certificate, draw a warrant on the state treasurer for the amount so certified in favor of the chairman of the board of commissioners. The court said:

"In view of the manifest purpose of the constitution to protect the treasury by requiring the board of examiners to adjust all claims, it cannot be held that the many and important claims arising against the state, and which, as claims, have never been acted upon by the legislature, are exempted from the investigation of the board. Without stating at length the various positions taken by relator, there is an insuperable objection common to all. Each contention involves an exemption of the claim of the county from the action of the board of examiners, and each is conclusively answered by the provisions of the

constitution defining the duties of the board. It is not within the power of the legislature to confer this authority elsewhere."

In California a board of examiners is created by statute, not by the Constitution, and given powers similar to those conferred upon the board in this state by the Constitution. The law provides that the controller must not draw his warrant for any claim unless it has been approved by the board, and when thereafter the controller is directed to draw his warrant for any purpose, this instruction must be construed as subject to the provisions of this section, unless the direction is accompanied by a special provision exempting it from its operation. The case of *Ingram* v. *Colgan,* supra, involves the construction and application of these provisions of the statute to a later enactment providing for the payment of bounties. The Bounty Act of California (St. Cal. 1891, p. 280) was very similar to chapter 36, Laws of Utah 1925. It provides for a definite sum for each animal killed subject to bounty, and the manner in which such claim should be asserted before the board of supervisors of the county wherein the animals were killed, and directs that the state controller should pay the bounty claim upon presentation of the certificate from the board of supervisors. An effort was made by the bounty claimant to mandamus the controller to issue his warrant upon presentation of the certificate without approval by the board of examiners. It was there asserted by the claimant that there was no necessity of presenting the claim to the board of examiners; that it had been audited and made certain by the action of the board of supervisors; and that no duty remained except for the controller to draw his warrant upon the treasurer. In denying the petition for a writ of mandamus the court said:

"The statute in regard to bounties for killing coyotes may be construed to direct the controller to draw his warrant, but it does not in any way exempt it from the operation of such section. Whatever the rule may be in cases which *do not come within the technical* definition of the term 'claim,' we are of opinion that, if any force is to be given to this section in any case, it applies to the present one. The

controller can never draw his warrant upon the treasurer except when directed so to do by some law; and, if such direction alone is sufficient to require it, then we at once do away with the force and effect of a salutary provision of the statute, enacted as a safeguard of the treasury. It will not do to say that the supervisors have audited the claim, and that that is sufficient. The statute has designated the board of examiners as the body by which the audit must be made, and either such audit of a claim must be had, or a special provision exempting the claim from such audit must be contained in the direction to the controller, before it becomes his duty to issue his warrant."

We see no escape from the conclusion that a bounty certificate is a claim against the state, that it is not "salary or compensation of officers fixed by law," and thus not coming within that excepting it is such a claim as, under the Constitution, must be submitted to the board of examiners for its action. The petition herein is fatally defective, in that it fails to allege presentation to and approval by the board of examiners of the claim or certificate sued upon. It is unnecessary to pass upon or consider questions raised with regard to the powers and duties of the state auditor as an auditing officer.

The demurrer is sustained, the writ of mandamus denied, and the case dismissed. Costs to defendant.

CHERRY, C. J., and ELIAS HANSEN, J., concur.

STRAUP, J. (dissenting).

So far as the matters involved, the substance of the bounty laws of this state as they now exist has been in force for about thirty years. As stated in the prevailing opinion, by section 435, chap. 36, Laws Utah 1925, it is provided that the county commissioners of each county are required annually to levy a tax of five mills on the dollar on the assessed valuation of all sheep and goats, and two mills on all range horses and cattle, the tax to be collected as other taxes, and paid into the state treasury and by the treasurer is to be kept "in a separate fund known as the State bounty fund"; that

the treasurer annually is required to pay $5,000 of the fund to the state board of agriculture for the destruction of rabbits and rodents, 50 per cent of the balance also to the state board of agriculture to be spent in co-operation with the federal government for the eradication of rabies and the destruction of predatory animals, and the balance of the fund to be paid out by the treasurer, on warrants of the state auditor, to persons killing in the county designated predatory animals. The act provides the amount to be paid for each animal killed. Any person claiming a bounty is required, as by section 437 provided, to present the hide or pelt of any such animal killed to the county clerk, who is required (section 438) to keep a true account of the "warrants issued * * * and whenever the amount so issued reaches the sum of $50.00, or more, the clerk shall present such account, sworn to by him as being true and correct, to the State auditor, who shall draw his warrant upon the State treasurer, who shall pay the same out of the State bounty fund." Section 440 requires the clerk to issue certificates as therein provided; and by section 441 he is required to transmit certified copies of affidavits and other records of the clerk's office relating to the subject to the state auditor, who, on finding the affidavits and other papers so transmitted to be in conformity with the provisions of the act, "shall draw a warrant in favor of the person entitled to the same upon the State treasurer for the amount shown by said certificate to be due" (section 442), and deliver it to the person entitled thereto.

It thus is seen that by the act a complete procedure is provided for the presentation and payment of bounty claims and all that is required to be done to entitle the claimant to a warrant from the state auditor. Such requirements necessarily negative a presentation of the claim to the state board of examiners for its approval. Thereunder the state auditor is just as much authorized and required to issue a warrant in payment of a claim of a claimant killing predatory animals without first requiring the claim to be pre-

sented to and approved by the board of examiners, as is the state treasurer to pay 50 per cent of the balance of the bounty fund to the state board of agriculture after having paid to it $5,000 out of the fund.

For thirty years claims for killing predatory animals have been paid as by the act provided without presenting them to the board of examiners. Not until now, to entitle the holder of a certificate to a warrant or to authorize the state auditor to issue a warrant in payment thereof, was it at any time contended that such claims required presentation to or approval by the board. When the certificates in question were presented to the state auditor, he, finding that all certified copies of the affidavits and records of the county clerk and all other papers transmitted to him were regular and in full compliance with the statute, did not refuse to issue a warrant upon the ground that the claims had not been presented to or approved by the board, but on the ground that he claimed the right to go behind the certificates and the records of the county clerk certified and transmitted to him, all of which admittedly were regular and in full compliance with the statute, and, independently of such records, to investigate the merits of the claims and himself ascertain the truth of the matters and things recited in, verified, and certified to by the records and papers transmitted to him. He, of course, had no right to do that. *State Board of Land Commissioners* v. *Ririe, Auditor,* 56 Utah, 213, 190 P. 59; *U'ren* v. *State Board of Control,* 31 Cal. App. 6, 159 P. 615. His duties in such respect were ministerial and not discretionary. The contrary is not seriously contended. That is not what divides us.

When the alternative writ of mandamus was issued requiring the auditor to issue the warrant or show cause, the Attorney General appearing for the auditor by his demurrer to the petition for the first time raised the question by urging that it was not alleged, as it was not, that the claims had been presented to and approved by the board of examiners; and therefore urged that the auditor was not authorized and

could not be required to issue the warrants. The auditor of course is not precluded from raising the question, though his refusal to issue the warrants was not based on such ground and though for thirty years warrants without question had been issued on such claims and paid without presentation to or approval by the board of examiners. Still, when the validity of the statute and the procedure in such particular at this late day are challenged, the statute should not now be held invalid nor the procedure disturbed except for impelling reasons.

That the statute clearly permits and contemplates the issuing of warrants in payment of bounty claims, without requiring the claims to be presented to and approved by the board, may not well be doubted. No serious contention is made to the contrary. While in the prevailing opinion it is not expressly stated that the statute in such particular is unconstitutional, yet the holding necessarily is to that effect. The constitutional provision, article 7, § 13, which it is contended demands presentation of bounty claims to the board of examiners, provides that the Governor, secretary of state, and Attorney General shall constitute "a Board of Examiners, with power to examine all claims against the State except salaries or compensation of officers fixed by law, and perform such other duties as may be prescribed by law; and no claim against the State except for salaries and compensation of officers fixed by law, shall be passed upon by the Legislature without having been considered and acted upon by the said Board of Examiners." It is thus seen that the inhibition relates only to the Legislature, forbidding it to pass on any claim against the state not considered and acted on by the board of examiners. As to the board, the Constitution but confers power on it to examine all claims against the state, except salaries, etc., and to perform such other duties as may be prescribed by law.

However, in such connection Comp. Laws Utah 1917, § 2471, and section 2482 as amended also are referred to. The former relates to a claim against the state for which an

appropriation has been made. The latter provides that the state auditor shall not draw his warrant for any claim unless it has been approved by the board, except for salaries, etc., or for moneys expressly appropriated by law. Such sections must be read and considered in connection with the whole of title 29, Comp. Laws Utah 1917, of which they are a part. They should not be disconnected from context or subject-matter to which they relate and looked at independently thereof. When properly considered, I think the sections have no application to the character of claims as herein involved and which are to be paid not out of public revenues or of a general fund, but as expressly provided are to be paid out of a special fund created by the Legislature for a particular purpose, and where by the act itself creating the fund, payment of claims and the manner of presenting and paying them are specifically prescribed by the same act creating the fund and where the law itself fixes the amount and manner of payment. If it be considered that the claims in question are claims against the state and within section 2482 as amended, which I think they are not, and that by such section the auditor is forbidden from drawing a warrant unless the claims are approved by the board, then such section is in conflict with the bounty fund act which clearly contemplates and permits payment of bounty claims without presentation to or approval by the board of examiners, in which event the former must give way to the latter which is a subsequent statute.

This brings us then to the constitutional provision. Similar provisions by Idaho and Nevada were held to embrace or include only claims of an unliquidated character. *Winters* v. *Ramsey*, 4 Idaho 303, 39 P. 193; *State* v. *National Surety Co.*, 29 Idaho 670, 161 P. 1026, 2 A. L. R. 251; *State ex rel. Ash* v. *Parkinson*, 5 Nev. 15. I think such is the proper construction of our provision. *State ex rel. Davis* v. *Edwards*, 33 Utah 243, 93 P. 720, is referred to and relied on as supporting a contrary doctrine and as an authority that the constitution includes all claims, liquidated and unliquidated,

except compensation and salaries of officers, etc., and requires all claims against the state to be presented to and approved by the board of examiners before the state auditor is authorized to issue a warrant in payment of them. In the opinion of that case there is undoubted language to that effect. However, the claim there considered was unliquidated. The facts recited in the opinion clearly show that; the court in effect so stated. What the court decided with respect to such a claim constitutes an adjudication and a precedent of binding effect as to unliquidated claims. What was said beyond that, was mere dicta without binding effect. *Callahan* v. *Salt Lake City,* 41 Utah 300, 125 P. 863. While all members of the court concurred in the opinion, yet such does not constitute a concurrence in everything stated or discussed in the opinion or even as to all of the reasonings therein. The discussion of the questions and conclusions reached essential to a proper disposition of the case were that of the court; but in concurring therein, it is not to be understood that everything stated in the opinion was necessarily adopted as the opinion of the court. Every opinion or decision must be read and considered in the light of the facts upon which it is based and in view of the particular question or questions presented for decision. They constitute the foundation of the entire structure which cannot with safety be used without reference to them. Attempts to pick out parts of an opinion without reference to the facts upon which it was based and apply them indiscriminately in other cases is bound to result in confusion and wrong results. *Larzelere* v. *Starkweather,* 38 Mich. 96. I therefore think *State ex rel. Davis* v. *Edwards* is not decisive of the question now involved.

The case of *State* v. *Hallock,* 20 Nev. 326, 22 P. 123, also is cited as an authority that under the Constitution the claims in question required presentation to and approval by the board of examiners. A reading of the case clearly shows that the character of the claim there considered was an unliquidated claim; and what was there said and decided

was with respect to such a claim. Here, the amount to be paid for each hide or pelt is specifically fixed by statute, by the very act creating the bounty fund. That such a claim is a liquidated claim may not, I think, successfully be and is not seriously disputed. Because the claims involved more than two hides or pelts does not determine the character of the claims. That is, it may not be said that if a claimant presents one hide or pelt, the claim is liquidated because the amount to be paid is fixed by law; but if a claimant presents two or more hides or pelts, the claim is unliquidated. As well say that if a claimant present one bond for payment the claim is liquidated but if he presents two or more bonds the claim is unliquidated. If the auditor may go behind the certified record and papers transmitted to him and aliunde the record determine for himself the number of animals killed by a claimant, then may he also go behind the record and determine whether the animal or animals were killed by the claimant in the county certified to in which they were killed, as well as to determine aliunde the record any and every other matter of fact.

Nor do I think the case of *Ingram* v. *Colgan*, 106 Cal. 113, 38 P. 315, 39 P. 437, 28 L. R. A. 187, 46 Am. St. Rep. 221, is applicable. In the first place, the California statute relating to bounties is different from our statute. In the next place, under the California statute bounties are paid out of "the general fund," out of public revenues. Here they are paid out of a "special fund" created by special taxes levied on live stock for the protection and benefit of owners of live stock, and where the act which creates the funds also prescribes the manner of presentation and payment of claims out of the fund. I think such a claim is not a claim against the state. The treasurer is but a naked custodian of the fund and by the act creating it is directed to pay claims out of the fund as specifically prescribed in the act. The act expressly provides that when the fund is exhausted no further certificates or warrants shall issue. In no particular may such claims be asserted against the state, nor has it

assumed or undertaken any liability with respect to them, nor has it at any time made any appropriation for their payment. The taxes levied by the county commissioners and collected and held in a special fund for a particular purpose, and though paid to and held by the state treasurer for such purpose, does not make the fund created thereby the property of the state. *Lucas* v. *Board of Commissioners,* 44 Ind. 524.

*Wilkinson* v. *State,* 42 Utah 483, 134 P. 626, also is cited and relied on by the defendant as an authority that the claims though payable out of the special fund nevertheless are claims against the state requiring presentation to and approval by the board of examiners. When the case is read in light of the facts and of the questions there presented for review, it readily is seen that the decision lends no support to the contention. The action there was brought by the plaintiff against the state, the state land board, members of the board, and the state engineer to recover damages of an unliquidated demand, for injuries to crops and lands caused by flood waters, not predicated on and without allegations of negligence. Judgment for a stated amount was rendered against only the land board, which by the trial court was directed to be paid out of the reservoir fund, a trust fund. During the trial a nonsuit was granted against the state and members of the land board and the action as to it and them dismissed. While the motion for nonsuit as against the state engineer was overruled, yet no judgment was rendered against him. The land board thus was the only appellant. On the appeal, this court held that there were neither allegations nor proof of negligence and no evidence to show that the land board otherwise caused or was responsible for the flood conditions and thus reversed and vacated the judgment. That ruling completely set the judgment aside and sent the plaintiff out of court. The court, however, further held that in no event was the trial court authorized or justified in directing the judgment against the land board to be paid out of the reservoir fund. Certainly not. The trial court

might as well have directed that the judgment be paid out of the bounty or some other special or trust fund. After all that was decided, which was well decided, the writer of the opinion then proceeded to discuss the question as to whether any action could be maintained against a sovereign state without its consent and reached the conclusion that it could not. When the nonsuit as to the state was granted and the action as to it dismissed, the state was out of the case. No appeal was prosecuted from such ruling. Though it be true that the state was not suable and for that as well as for other reasons the nonsuit was properly granted and the action as to it dismissed, yet what was said concerning the proposition, and not in controversy on the appeal, was wholly unnecessary and irrelevant. But as a semblance for such consideration it was asserted that though the judgment "in form" was against the land board, yet "in fact" was against the state. The semblance is emphasized when it is noted that the judgment neither in form nor in substance was against the state, and in the very nature of things, after the nonsuit was granted and the action dismissed as against the state, no judgment of any kind either directly or indirectly could have been rendered against the state. Then, on such semblance, much further dicta is expressed with respect to the necessity of the presentation to and approval by the board of examiners of the unliquidated claim or demand—injury to crops and lands—before an action against the state could be maintained. That is to say, notwithstanding no action against the sovereign state could be maintained (without its consent) and not withstanding the action as against the state was dismissed and the ruling with respect thereto not appealed from, nevertheless it was found necessary to further observe that no action could be maintained against the state on the unliquidated claim or demand without presentation and approval of the claim to and by the board of examiners; and that in no event could the reservoir trust fund be sequestered for the payment of consequential injuries to crops or lands. And now, all that is cited as an authority

that the liquidated claims here, though payable out of a special fund nevertheless are claims against the state and require presentation to and approval by the board of examiners. I cannot regard the case as binding authority to that effect. While it is not referred to in the prevailing opinion, nevertheless the dicta therein stated as to the presentation of claims to and approval by the board of examiners is followed and applied to a liquidated claim.

I thus am of the opinion that no good cause is shown why the warrants should not issue and that the auditor should be directed to issue them as in the petition demanded.

EPHRAIM HANSON, J.

I concur in the views expressed by Mr. Justice STRAUP in his dissenting opinion.